LOWELL COUNTRYMAN v. JAMES BUNKER.

*Evidence—Books of account.*

1. Where a plaintiff is allowed to refresh his memory from a memorandum book, which he has kept in pencil, and on cross-examination his attention is called to a certain page, and he is asked if it has not been rubbed some with a pencil, which he denies, and the page is then offered in evidence, he is entitled to have the whole book before the jury, as a comparison of the page in question with the other pages would disclose whether there was anything peculiar in the appearance of that page.

2. In order to entitle books of account to be received as evidence, it must appear that the party keeping and producing them is usually precise and punctilious respecting the entries therein, and that they are designed at least to embrace all the items of the account which are proper subjects of entry.[1]

    So held where, in a suit brought to recover a balance due for wages and a sum claimed to have been loaned to the defendant, the defendant offered in evidence a memorandum book in which certain entries were made by his wife, who knew nothing about the details of the business, and only made such *memoranda* as defendant requested her to make. The book did not contain an accurate statement of all the items of account between the parties, but simply *memoranda* of when plaintiff commenced work, the rate of wages, and amount of money paid. It contained no account of lost time; and the wife admitted that her husband received $30 from plaintiff, which she placed in the safe, and that no memorandum was made in the book of its receipt. The book was excluded by the court, and the ruling is sustained.

Error to Shiawassee. (Newton, J.) Submitted on briefs April 5, 1894. Decided June 16, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

---

[1] See note at end of opinion.

*Watson & Chapman,* for appellant.

*John T. McCurdy,* for plaintiff.

McGRATH, C. J. Suit is brought to recover a small balance of wages, and the sum of $60, claimed to have been loaned to defendant.

Plaintiff was allowed to refresh his memory from a pocket memorandum book, which had been kept in pencil. On the cross-examination of plaintiff, counsel for defendant called attention to a certain page, and asked if it had not been "rubbed some with a pencil." Plaintiff responded that it had not. Defendant's counsel then offered that page in evidence. The court ruled that the plaintiff was entitled to have the whole book before the jury. The ruling was correct. The point made was that the page referred to indicated that it had been rubbed. A comparison of that with other pages of a pencil-kept book would have disclosed whether there was anything peculiar in the appearance of that page.

Defendant offered in evidence a memorandum book in which certain entries were made by his wife, and the court excluded it. The ruling was correct. The wife knew nothing about the details of the business, and only made such *memoranda* as her husband requested her to make. It was not claimed that the book contained an accurate statement of all the items of account between the parties. It contained simply *memoranda* of when plaintiff commenced work, the rate of wages, and of moneys paid to plaintiff. It contained no account of lost time, and it was claimed that moneys were paid to plaintiff which were not entered upon the book. The wife admitted that her husband received $30 from plaintiff, which she received and placed in the safe, and that no memorandum was made in the book of its receipt. In order to entitle books of account to reception as evidence, it must appear that the

party keeping and producing them is usually precise and punctilious respecting the entries therein, and that they are designed at least to embrace all the items of the account which are proper subjects of entry.

The other assignments relate to the court's instructions to the jury. Some parts of the charge are open to the criticism that they are argumentative, but we are not able to say that defendant was prejudiced.

The judgment is therefore affirmed.

The other Justices concurred.

---

### BOOKS OF ACCOUNT AS EVIDENCE AT COMMON LAW AND UNDER THE STATUTE.

For cases bearing upon the question of the admissibility of books of account as evidence under common-law rules, and under 3 How. Stat. § 7526, which provides that in all trials, etc., books of accounts, containing charges or entries for money paid, laid out, furnished, or lent, shall be received and admitted as evidence, and deemed to be evidence of such charges and entries, and that such moneys were so paid, laid out, furnished, or lent as are in such books charged or entered, and of the liability of the person charged therefor, in the same manner and to the same extent as books of account containing charges for goods, wares, or merchandise sold and delivered are received and admitted as evidence of sale and delivery of such goods and merchandise, and of the liability of the person charged therefor; but which exempts from its operation persons acting or having acted as commission merchants or agents for the sale of produce, grain, or other property on commission, except as to the amount charged as commissions for selling or buying such produce, grain, or other property, unless accompanied by a voucher or receipt for the money so claimed to be laid out, lent, or furnished,—see:

1. *People v. Bank*, 1 Doug. 282, where the act under which the defendant claimed to be incorporated declared that, unless the sum of $15,000 in specie was paid into the bank within two years after the passage of the act, the same should be void and of no effect, and the only evidence upon this point was an entry in defendant's books showing that the money was paid in, followed by entries tending to show that it was soon afterwards drawn from the bank. And in *quo warranto* proceedings against the defendant, based in part upon the alleged failure to make such payment, it was held that the first entry, if considered separately, would be regarded as

*prima facie* evidence that this part of the act had been complied with; that, while the succeeding entries were of a suspicious character, this circumstance would not warrant the Court in permitting a mere suspicion of unfairness, or even fraud, to overthrow a fact legally and properly proved by the books themselves.

2. *Jackson v. Evans*, 8 Mich. 476, holding:

*a*—That a party's own entries on his books of account cannot be admitted as evidence in his behalf, unless a foundation be first laid by proving that he had no clerk; that some of the articles charged had been delivered; that the books produced are the account-books of the party, containing original entries; and, by further proof by those who have dealt and settled accounts with him, that he keeps fair and honest accounts.

*b*—That the servant of a man dealing in brick, who keeps a tally-book or slate upon which he makes *memoranda* of sales during the day, reporting them to his employer at night, who enters the amounts upon his regular account-books, is not a *clerk* within the meaning of this rule, and such regular account-books are to be considered the books of original entries.

*c*—That where, in charging the brick, there was entered opposite each charge the name of the teamster who hauled the load, these teamsters should all be called to verify the charges, or their absence accounted for, before the books are received in evidence.

*d*—That it is not competent, in order to dispense with the necessity of calling the teamsters, to prove by others that, if called, it would not be possible for them to testify, from recollection, to the quantity hauled; that the main fact to be established is that the articles have been delivered, and it is only on failure to prove the delivery, or the quantity, by the teamsters when called, that the books are received as the next best evidence.

*e*—That the account-books kept by a party are evidence of so slight a character that no extension of the rule which admits them, beyond the apparent necessity of the case, should be allowed; that both the servant who delivered, and the teamsters who hauled, the brick, in such a case, should be called to testify to their recollection, and the books are only received as evidence upon the presumption that no proof exists which has not been adduced.

*f*—That the witnesses to prove that the party keeps honest books should be able to identify the books, and to testify to settlements made from the entries on such books; that it is not sufficient that they testify to having made settlements with the party, from bills presented, which they found honest, without being able to testify whether such bills were from the account-books or not.

3. *Page v. Stephens*, 23 Mich. 357, where the complainant, as receiver of an insolvent firm which had made an assignment for the benefit of creditors, filed a bill to foreclose a mortgage trans-

ferred to the assignee as collateral security to a note given in payment for a stock of goods purchased from him, which note the purchaser claimed to have paid to the assignee in goods furnished and money paid to him at intervals from before the sale till· shortly after complainant's appointment as receiver. On the hearing it appeared that the assignor of the mortgage had an account current against the assignee, reaching back a considerable time before he bought the stock of goods, and that, besides goods, there were more or less cash items in it. The only witnesses whose testimony tended to prove any part of the defense in a tangible shape·could not testify as to any considerable number of items of their own knowledge, and depended entirely upon the charges alleged to have been made, and one of them, who professed to swear from the accounts, could not give the exact dates. None of the books were produced. And it was held that the Court were not informed, therefore, by anything that would be reliable, whether the items all occurred in the same set of accounts; nor whether they were charged individually, or in the assignee's account; nor whether they were set down at their respective dates, and in proper order; nor whether there was any credit side to the account; and that, where so much depended on the fullness and accuracy of the entries, it would be altogether improper and dangerous to dispense with their scrutiny, and that every presumption must be made against them, when withheld.

4. *Peters v. Gallagher*, 37 Mich. 407, holding that, in an action on an implied *assumpsit* for services in breaking a rollway, the entries made in plaintiff's time-book by his foreman, as to the number of days' work done by him, is admissible in connection with the testimony of the plaintiff as to his knowledge of the correctness of the entries.

5. *Howard v. Patrick*, 38 Mich. 795, where, on the trial of an appeal from the rejection of a claim filed by the administratrix of one estate against another estate, the defendant, after introducing evidence tending to prove that a copartnership existed between the decedents, and that the decedent against whose estate the claim was presented kept the accounts relating to the copartnership business, offered in evidence a certain book of accounts in the handwriting of said decedent, which purported to relate to the partnership business, some of the entries in which had been made in the presence of the other decedent. And it was held that, in connection with the evidence given relating to the copartnership matters, the book was properly admitted, as tending to prove, not only a partnership in fact, but the condition of the copartnership accounts.

6. *Hulbert v. Hammond*, 41 Mich. 343, where, in a suit upon a running account, it was stipulated that, according to the accounts

kept by the plaintiff, the defendant was indebted to him at a specified date in the sum of $71.50, and that said account was correct unless, before that time, the defendant had paid the plaintiff the sum of $30, which was not credited in the account, and the payment of which was denied by the plaintiff. On the trial the defendant, having thus conceded a *prima facie* case to the plaintiff, called on him to produce for examination the books containing said accounts, which the plaintiff refused to do, and the justice held that he need not do so until the defendant had given evidence of the time when the disputed payment was made. Subsequently the defendant was permitted to put the books in evidence, after which the plaintiff testified on his own behalf that the disputed payment had never been made to him, and that, if it had been made, it would have been credited on the books. The defendant thereupon offered to impeach the books by showing by witnesses who had dealt with the plaintiff, and settled by his books, that they found their accounts there kept to be incorrect, and the justice excluded the evidence. And it was held:

*a*—That the justice appeared to have assumed that defendant wanted to have a view of the books in order that he might shape his own testimony so as to avoid any inferences against his case that might arise from the credits on the books; that he ought not to have made any such assumption, and should have permitted the defendant to put the books in evidence if he saw fit to trust his interests to such disclosure as they might make; but, as the defendant was subsequently permitted to introduce the books in evidence, and had the opportunity to make such explanations as he saw fit respecting them, it could not be supposed that he was injured by the ruling.

*b*—That the justice did not err in excluding the impeaching evidence; that the defendant himself had put the books in evidence, and, if they were impeached, the effect would only be to cause the rejection of some of his own proofs; that the bare allusion by the plaintiff to the account did not make it a part of his case, and the object of the defendant in attacking the books obviously was not to get rid of the books themselves as untrustworthy, but, by showing the unreliability of this part of his own proofs, to raise an inference against the oral testimony of the plaintiff.

7. *Lambert v. Griffith*, 44 Mich. 65, where the matters in dispute related to the allowance and disallowance of certain items in the settlement of the accounts of the complainant with the firm of which he and the defendants had been members, and of the books and finances of which firm complainant, for a time at least, had had charge. The settlement was made pursuant to an agreement which provided, among other things, for an examination of

the books of the firm, in order to ascertain the moneys received and not accounted for by the complainant. The complainant excepted ·to the disallowance by the commissioner of an item of $1,000, deposited in the bank to the credit of the firm, which was charged to the complainant because, though appearing on the firm books, it was not accounted for on the cash book kept by complainant. It appeared, however, that the money was all paid out by the bank upon the checks of the firm. And it was held that, in view of the fact that said sum had gone to the credit and use of the firm, the complainant could not be charged therewith, whether appearing upon the cash book of the firm or not.

8. *Manufacturing Co. v. Stimson*, 48 Mich. 213, where the plaintiff and defendant joined in driving a quantity of logs, a portion of which were owned by each, out of a branch of a river into the main stream, and each was to furnish a share of the required labor, implements, and provisions proportionate to the quantity of logs to be run for each. Plaintiff, claiming to have furnished more than its share of such labor, etc., sued to recover the excess, and on the trial one of its witnesses was allowed to use its private account-books to support its bill of particulars, and was then permitted, on testifying, to make use of the bill of particulars as competent and trustworthy for the purpose of charging the defendant for labor and articles claimed to have been furnished by it in carrying out the contract for running the logs. And it was held that these entries in the books, not being shown as against the defendant to be rightly there, were purely self-made testimony, and wholly ineffectual to help the bill of particulars, and that it was an attempt to prop up one broken reed with another.

9. *Larson v. Jensen,* 53 Mich. 427, holding that the fact that goods are charged on the books of the seller to the person to whom they were delivered is not conclusive that they were sold upon his credit; and *Loranger v. Foley,* 79 Mich. 244, holding that a charge upon a vendor's books is not *conclusive* as to whom the sale was made and credit given, but may be explained and shown to be a mistake, and that the sale was really made and credit given to a third party.

10. *Van Ness v. Hadsell,* 54 Mich. 560, where a county treasurer sued his predecessor for an alleged balance of $800, for which plaintiff claimed to have accounted as received from the defendant, when in fact such sum was not turned over to him. And, in affirming a judgment in favor of the plaintiff for the $800, it was held:

*a*—That there was no force in the argument that, because plaintiff, in his accounting, charged himself in favor of the county

with this money, he was estopped from claiming that defendant had not actually paid it to him.

b—That the defendant's entries on his official books were evidence against him to the extent of their admissions, and the burden was on him to show that he paid over to plaintiff the balance appearing there; that the books were admissible under any circumstances, and, if it was claimed they had been altered, that could not be presumed to have been done at all, unless manifest, nor presumed to have been done wrongfully.

c—That it was proper for the court to suggest to the defendant, when it appeared that his books showed a receipt of money from a township, which he desired to dispute and claimed to have been a changed entry, that he should resort to the township treasurer to show that it was not paid to him.

11. *Grant v. Masterton*, 55 Mich. 161, where the plaintiff shipped to a firm, of which the defendants and one Watson were members, certain produce, which was received by Watson, and sold by him. Watson had been the manager of the firm, and the defendants purchased his interest upon the strength of his statement of the condition of the firm business, which statement did not disclose the transaction in question. The plaintiff sued the defendants, who had assumed the payment of the firm debts, for the price of the produce, and on the trial one of the defendants, being on the stand as a witness, was asked whether the plaintiff's account on the firm books showed a credit to him of the amount of his claim. This evidence, as also said books, which were called for by the plaintiff to be used as evidence in regard to his account, was excluded. And it was held that this was error; that the proposed evidence of the defendant would evidently have had some bearing upon the question whether the transaction was or was not a partnership one, and might have been very forcible evidence; that, if what was done by Watson was beyond the scope of the partnership business, it might nevertheless have been accepted by the partnership as done in its behalf, and proof that it was entered on the firms books would be a step towards proving such acceptance; that whether an inference would arise from the entry that the other partners knew of and assented to it might depend upon the circumstances, but these were for the consideration of the jury.

12. *In re Estate of McClintock*, 58 Mich. 152, holding that where account-books are received in evidence, as they may be in some cases, it is only where the entries are apparently made of items as they arise, and as contemporaneous *res gestae;* but an entry not of particular payments or advances, nor even of any aggregate, but of what remains due as a balance after allowing set-offs

and counter-claims, does not come within any known rule of evidence.

13. *McCausland v. King*, 60 Mich. 70, where plaintiffs sued a married woman for a bill of repairs to a house which they testified she said was hers, but for which they had before sued her husband, and recovered judgment.    Counsel for defendant, in cross-examining one of the plaintiffs concerning his testimony in the former suit, and as to how plaintiffs' books showed the account to have been charged, was met by the objection that the witness was not obliged to produce his books unless defendant called him as her own witness, and issued a subpoena *duces tecum*, and was not allowed to pursue the inquiry.    And it was held that, as the suit was brought on an account shown to have been charged in the books, the defendant was entitled to a full cross-examination upon all that the books would show, and was not bound to make the plaintiff her witness, and that plaintiff should have produced the books.

14. *Richards v. Burroughs*, 62 Mich. 117, where plaintiff sued to recover the price of wood, alleged to have been sold and delivered to the defendant at an agreed price per cord.    The defendant denied that he contracted to buy the wood, and claimed that the arrangement was that he should sell it for the plaintiff on commission, and pay him the agreed price for what he might sell. The defendant sought to introduce his books of account in evidence for the purpose of showing that the keeping of the heading of plaintiff's account was in corroboration of his claim.    And it was held that the books were properly excluded; that there was no necessity, apparent or alleged, of reference to the account as *memoranda* to refresh defendant's recollection; and, further, that the defendant did not place himself within the proviso of the statute, which makes it inapplicable to commission merchants, except as to the amount charged as commissions, unless the evidence is accompanied by a voucher or receipt for the money claimed to have been laid out, lent, or furnished, and that, under said statute, the books could not be used to prove the manner of the entry of the heading of the account against the plaintiff as a corroboration of defendant's theory as to the contract between them.

15. *Brown v. Weightman*, 62 Mich. 557, holding that it may be a query as to the nature and amount of proof required as precedent to the admission of books of account since parties have been made competent witnesses in their own behalf; but, whether or not the old rule in force when the testimony of the parties was excluded is to be continued, it is due the trial court that the reasons for an objection to the admission of the books should be

stated, if advantage of the same is to be taken in the appellate court.

16. *Wright v. Towle*, 67 Mich. 255, where, in replevin for chattel-mortgaged goods seized on execution as the property of the mortgagors, the contention of the defendants was that the mortgage was fraudulent as to creditors, and that the plaintiff gave no consideration therefor. The plaintiff testified that, the year before the mortgage was given, she loaned the mortgagors $100, and that her mother-in-law loaned them $600, and that she took the mortgage in her name to secure both amounts, and gave her mother-in-law her note for her claim, which was transferred to plaintiff. On her cross-examination plaintiff was interrogated as to what she gave for the $600 claim, and as to what moneys she had paid upon the note given therefor, the amount thereof, and dates, and the moneys she had received, and from whom; and on her redirect examination her counsel sought to introduce her bank-book for the purpose of showing the receipt of the money, and the dates, and also the book containing a statement of the amount of money she had paid to her mother-in-law before said levy, both of which books were excluded by the circuit court. And it was held that the cross-examination of the plaintiff upon this subject was evidently made with a view to discredit her testimony, and on the re-examination she should have been permitted to give such facts in evidence as would tend to support her statements, and remove any impressions in that direction which the cross-examination may have made; that what the plaintiff paid, and promised to pay, her mother-in-law, constituted the consideration she paid for the mortgage, and which the defendants sought to impeach by showing no consideration; and that both books were admissible for the purpose for which they were offered, and should have been received.

17. *Montague v. Dougan*, 68 Mich. 98, where plaintiff sued for the price of goods obtained by the defendant, and charged to him, but delivered by his order to a third person, the plaintiff claiming that the credit was given to the defendant. And it was held:

*a*—That, since the statute has made the parties to a suit competent witnesses, they can testify as well to the correctness of their books as to any other fact; and proof by third parties of their having settled according to such books, and that they were correctly kept, is not essential to their introduction in evidence.

*b*—That, under the facts in the case, the plaintiff's books were properly admitted to show to whom the goods were charged, and to whom the credit was given.

18. *Hurley v. Watson*, 68 Mich. 531, holding that a person is presumed to be cognizant of the contents of his books of account, but the probative force of such presumption may be strong or weak, as the circumstances may show that the party made the

original entries, or that they were made by a clerk or book-keeper, and may be entirely overcome and disproved by the positive uncontradicted testimony of the party that the accounts were kept and entries made by such agents, and had never been examined by him, and that he had no knowledge thereof.

19. *In re Estate of Mabel Ward,* 73 Mich. 220, where, on the settlement of a guardian's account, some stress was laid upon an entry in one of the books of the administrator of the estate of the ward's father to the effect that he had turned over to her mother certain stock to a stated amount in full of her share in the estate of her deceased husband. It was admitted that the mother had the stock, but that she received it on any such terms as stated in the entry was denied. And it was held that the entry could not prove anything more than the charge of such an amount to the mother, if it proved that, and that the further entry, as to its being in full settlement of her interest in the estate, could have no weight as proof of such settlement.

20. *Doolittle v. Gavagan,* 74 Mich. 11, holding that where, in a suit by a surviving, partner, the defendant claims to have paid the account sued upon to the deceased partner, and is allowed in support of such claim to make proof of the purchase of a draft by such partner, at about the time of such payment, in the city where defendant resided, payable to the firm, the book from which such partner reported his collections to the firm on his return from his trip, and which did not show the receipt of said payment from the defendant, should be received in evidence on rebuttal.

21. *Mooney v. Davis,* 75 Mich. 188, holding that statements made by an accountant from account-books, in evidence without objection, showing, as claimed, the condition of the owner's business at a given date, are admissible in evidence in connection with said books.

22. *Ganther v. Jenks & Co.,* 76 Mich. 510, holding that the books of a corporation, when properly kept by the proper officers or agents of the corporation, are competent testimony to prove the payment to an employé of the amounts charged to him therein.

23. *Macomb v. Wilkinson,* 83 Mich. 486, holding that an entry in the handwriting of a deceased party, made in a day-book kept by him in his lifetime in the regular course of business, is competent evidence.

24. *Lester v. Thompson,* 91 Mich. 245, holding that books of account containing charges for money paid, laid out, furnished, or lent are admissible in evidence under How. Stat. § 7526; and the rights of the opposite party are properly guarded by instructing the jury that they are *memoranda* from which the party offering them may refresh his recollection, and testify in regard to the transactions themselves; citing *Montague v. Dougan,* 68 Mich. 98.

25. *Hyde v. Shank*, 93 Mich. 535, where, in a suit involving the question whether a chattel mortgage was or was not paid, the plaintiffs testified from recollection to the amount due on the mortgage, and produced their books, showing, as they claimed, the true state of the mortgagor's account with them, and, without formally offering the books in evidence, tendered them to the counsel for the defendant for examination. And it was held that the testimony was competent, and if the defendant questioned it, and believed that the books would show the contrary, it was his duty to examine the books, and put them in evidence if he desired.

26. *Publishing Association v. Fisher*, 95 Mich. 274, holding:

*a*—That proof that books of account have been correctly and accurately kept is sufficient to meet the claim that there is no evidence tending to show their fairness, raised under an objection that they are irrelevant, immaterial, and incompetent as evidence.

*b*—That it is not necessary, in order to lay a foundation for the introduction of books of account in evidence, for the owner to call as witnesses third parties who have settled by the books.