### MASTER SPARK CO. *v.* HICKERSON.

1. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.

> In an action by a corporation against its selling agent, who was also a stockholder of the corporation, for a balance claimed to be due, testimony by the person who kept the books, that the journal was the original book of entries, that the ledger was posted from the journal, that the entries were made when the transaction took place, that they were made by herself, and that the books contained all the transactions between the parties, *held*, a sufficient showing to admit them in evidence.

On admissibility upon testimony of bookkeeper, of entries in parties' books of account, based upon oral or written statements by others, see note in 36 L. R. A. (N. S.) 899.

On authentication and correctness of books of account and entries as affecting admissibility in evidence, see note in 52 L. R. A. 590.

2. Same—Appeal and Error—Harmless Error.

Whether the showing was sufficient or not, defendant was not prejudiced by the admission of the books, since his counsel admitted that the letters and telegrams and data from which the books were made up were offered and received in evidence, and the only question was as to their accuracy, which was for the jury.

3. Same—Admissibility.

Testimony as to certain sums owing by defendant to officers of plaintiff corporation on personal account was erroneously admitted, in the absence of any showing of an assignment thereof to plaintiff, or any averment of an assignment in the declaration.

4. Trial—Remarks of Counsel—Requests to Charge.

Remarks by plaintiff's counsel that defendant was an embezzler, referring to another action between the parties, were highly improper and prejudicial, and defendant's request that the jury be instructed to disregard them should have been granted.

5. Same—Collateral Issues.

Injecting collateral issues into the case, *held*, to have a tendency to confuse the issues and prejudice the jury.

6. New Trial—Overwhelming Weight of Evidence.

Although the evidence is persuasive that if the books were properly audited and correct totals arrived at, a less amount would be found owing by defendant than claimed, yet where it does not clearly appear that the books did not show the true state of the account, it cannot be said that the verdict was against the great weight of the evidence.

7. Trial—Proofs—Issues Submitted to Jury.

The trial court properly submitted to the jury the questions as to whether defendant was authorized to make the settlement which he did with the Kissel-Karr Company, and as to whether he was indebted to plaintiff for the amount it paid to the Fisher Subcasing Company to have the contract canceled.

8. Costs—Prolixity.

While defendant is awarded costs, he is limited to 250 pages of record and 40 pages of brief, both being unnecessarily prolix.

Error to Wayne; Marschner (Adolph F.) J. Sub-

mitted April 21, 1920. (Docket No. 21.) Decided
September 30, 1920.

Assumpsit by the Master Spark Company against
Benjamin F. Hickerson for money had and received.
Judgment for plaintiff. Defendant brings error.
Reversed.

*Millis, Griffin, Seely & Streeter* (*George B. Murphy,*
of counsel), for appellant.

*Asher L. Cornelius,* for appellee.

BIRD, J.   Mr. D. M. Sweeney, of San Francisco, pat-
ented an automobile accessory which, for a time, found
some favor in the automobile world.   He named it the
"Master Spark," and proceeded to manufacture and
place it upon the market.   It came to the attention of
defendant, who was engaged in selling such articles,
and he later made an arrangement with Mr. Sweeney,
or his associates, to sell it on commission.   In June,
1916, while these relations existed, a corporation with
a capital of $2,500 was organized in the city of Chi-
cago, and defendant was named president and sales
manager.   Mr. Sweeney was named vice president,
Mrs. Sweeney, secretary, and Mrs. Hickerson,. treas-
urer.   The company was organized as a selling agency
to market the product.

It was agreed that the plaintiff company should pur-
chase the master sparks of Mr. Sweeney at $4 a
dozen, and that defendant should go upon the road and
sell them.   The price at which they were to be mar-
keted was in dispute.   It was agreed that defendant
at the end of the year should be entitled to one-half
of the capital stock and net profits.   In addition, the
company was to pay his traveling expenses and allow
him $25 a week as salary.   Defendant worked under
this arrangement until near the close of the year,
when the parties fell into disagreement over his ac-

counts, and in consequence thereof they severed their business relations.

It was the claim of the company that defendant had not accounted for the proceeds of all the master sparks sold by him. Defendant insisted that he had and that he owed the company nothing. The disagreement over this issue resulted in the company having defendant arrested for embezzlement in the city of Chicago, which proceeding was still pending at the time of the trial. Later defendant, who is a resident of Detroit, caused Mr. Sweeney's arrest in Detroit on a *capias* for slander. The outcome of this suit was a judgment for Mr. Hickerson. Finally the present suit was begun in Detroit to recover the balance which the company claimed defendant was owing it. After a trial lasting 23 days, during which time the embezzlement case and the slander case were quite fully gone into, the jury returned a verdict for plaintiff of '$750. Defendant now assigns 88 errors upon the proceedings.

1. Error is assigned on the action of the trial court in admitting plaintiff's books of account in evidence. The reason assigned is that the books were built up from writings, letters, telegrams and other data, which were afterward offered and received in evidence. Mrs. Sweeney, the secretary, who kept the books, testified as to their accuracy. She testified that the journal was the original book of entries, that the ledger was posted from the journal, that the entries were made when the transaction took place, that they were made by herself, and that the books contained all the transactions between the parties. Under the rule laid down in *Ganther* v. *Jenks & Co.*, 76 Mich. 510, the showing made was sufficient to admit them. See, also, note to *Countryman* v. *Bunker*, 101 Mich. 218 where the cases are collected.

But whether the showing was sufficient or not in this particular case it does not appear that their ad-

mission was prejudicial to the defendant. Defendant's counsel admits that the letters and telegrams and data from which the books were made up were offered and received in evidence. In view of this it is difficult to see how any prejudice resulted to the defendant by their admission. The only possible harm under the proofs that could have resulted to defendant was the system employed in keeping them. This might, and probably did, confuse the jury, but this went to the question of their accuracy and that question was for the jury.

2. Complaint is made because the court admitted evidence of certain sums owing by defendant to Mr. and Mrs. Sweeney on personal account. It is said that these were matters with which the plaintiff corporation had no concern, as no assignment of them to the plaintiff was shown, neither was there any averment in the declaration of an assignment. The reply which plaintiff makes to this objection of defendant is the following:

"Defendant can hardly be heard to complain if Mrs. M. D. Sweeney and D. M. Sweeney are willing to waive any rights to certain small sums which they advanced to the defendant personally. By putting these claims in as claims of the Master Spark Company they thereby waived any right to these claims themselves."

This is indeed an easy way to dispose of the objection, but it will hardly do to dispose of the rules and practice of court in this summary way. In order to entitle plaintiff to recover indebtedness owing by defendant to third parties, it was necessary to prove an assignment from such third parties, and it was also necessary that the declaration should contain an averment of the assignment. Neither of these requisites having been shown, the testimony should not have been admitted. *Rose* v. *Jackson,* 40 Mich. 29; *Gates* v. *Comstock,* 107 Mich. 546; *Cilley* v. *Van Patten,* 58 Mich. 404; *Peirce* v. *Closterhouse,* 96 Mich. 124; *Mc-*

*Knight* v. *Lowitz,* 176 Mich. 452; Green's Michigan Practice, § 524.

3. On redirect-examination of Mr. Sweeney, the following took place:

"*Mr. Murphy:* You are trying now to show what the evidence was in that law suit.

"*Mr. Cornelius:* I am trying to show whether these books showed that this man was an embezzler.

"*Mr. Murphy:* Just a moment, you have never yet proven, and will never be able to prove, that he is an embezzler—

"*Mr. Cornelius:* We have proved it right now in this court.

"*Mr. Murphy:* I take an exception to the statement of counsel and I ask the court to here rule and charge the jury—

"*The Court:* I think the jury will understand that the time for argument will come at the close of the case and not at this time, and further, that remarks outside of the testimony are not to be considered.

"*Mr. Murphy:* I ask the court to rule that the remarks just made by counsel will be disregarded by the jury.

"*The Court:* I think that will apply to both counsel."

These remarks were highly improper and prejudicial to the defendant, and defendant's request that the jury should be instructed to disregard them should have been granted by the trial court. Inasmuch as assumpsit was relied upon for a recovery, no direct evidence of the embezzlement charges and the proceedings growing out of the same should have been admitted, and this is equally true of the matters growing out of the slander case. Injecting the issues in those collateral matters into this case was one of the causes for unduly prolonging it, and they also had a tendency to confuse the issues and prejudice the jury.

4. Defendant entered a motion for a new trial, one ground being that the verdict was against the overwhelming weight of the evidence. There is some merit in this claim. An examination of the system

of keeping the accounts with defendant is rather persuasive that if the books were properly audited and correct totals arrived at, they would not show that defendant was indebted to plaintiff in a sum as large as was claimed upon the trial.   It is asking rather too much of a lay jury to determine whether the system which was employed was a correct one, and whether it had confused the true state of the account.   There appears to be little difference between the parties with reference to the several items of the account, but the difference mainly grows out of what the sum total of the items shows.   Had an experienced disinterested bookkeeper or auditor been called as a witness by defendant it would have been a great aid to the jury in determining the true state of the account.   As it does not clearly appear that the books do not show the true state of the account we cannot say that the verdict was against the great weight of the evidence.

5. As the case must go back for a retrial some reference should be made to the questions raised relating to the Kissel-Karr note and the Fisher Subcasing contract.   Under the proofs it was clearly a question of fact for the jury to determine whether defendant was authorized to make the settlement which he did with the Kissel-Karr Company.   It was likewise a question for the jury whether defendant was indebted to plaintiff for the amount it paid to the Fisher Subcasing Company to have the contract canceled.   The court properly submitted both questions to the jury.

The judgment of the trial court will be reversed and a new trial ordered.   Defendant will recover costs of both courts, but will not be permitted to tax for more than 250 pages of record and 40 pages of brief, it being the opinion of the court that both are unnecessarily prolix.

STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.   MOORE, C. J., did not sit.