THOMAS M. PEIRCE ET AL. v. JOHN W. CLOSTERHOUSE.

*Contract—Assignment—Pleading—Principal and agent.*

1. An assignee of an open account cannot recover thereon under a common-count declaration in which the assignment is not averred; citing *Blackwood v. Brown*, 32 Mich. 104; *Rose v. Jackson*, 40 Id. 29; *Cilley v. Van Patten*, 58 Id. 404.[1]

2. A broker who contracts in his own name to furnish a bill of lumber at an agreed price, and places the order with lumber dealers for whom he has no right to make such a contract, and from whom he is only entitled to receive a commission on such orders as they accept, cannot be said to have made the contract in their behalf or as their agent.

[1] See *Altman v. Fowler*, 70 Mich. 57; also *Webster v. Williams*, 69 Id. 135, holding that a judgment in favor of an assignee, if not appealed from, is valid, although proof of the assignment is admitted without an averment of that fact in the declaration.

Error to Kent.    (Adsit, J.)    Submitted on briefs April 25, 1893.    Decided June 16, 1893.

*Assumpsit.* Defendant brings error.  Reversed.  The facts are stated in the opinion.

*C. O. Smedley,* for appellant.

*J. M. Jamison,* for plaintiffs, contended:

1. Where a contract, not under seal, is made by an agent in his own name for an undisclosed principal, either may sue upon it; citing *Sims v. Brittain,* 4 Barn. & Adol. 375; *Sims v. Bond,* 5 Id. 393; Bish. Cont. §§ 1079, 1080.

McGRATH, J.  Plaintiffs bring *assumpsit* on the common counts for a bill of lumber used in the construction of a house owned by defendant.

The house was built under a contract with one Cultice, who agreed to furnish all the materials.  Some time prior to the letting of the contract, one Quackenbush, who had been in the lumber business on his own account, met defendant on the street, and asked him if he intended to build any houses during that summer.  Defendant replied that he did, whereupon Quackenbush asked if he could not furnish him the lumber.  The conversation was then interrupted.  At another interview, Quackenbush called upon defendant, and asked if he was ready to place that lumber order, and defendant replied that he had not yet let the contract.  Quackenbush testifies that—

"He said he would let the contracts for the buildings, and I would have to figure with the contractor, and if I could figure low enough, which he hoped I could, he would be glad to have me get it.  He said—well, in the beginning, he said he let the contracts, and, as the lumber was being delivered, where the contractor O. K.'d the bills, he paid them."

Afterwards, Quackenbush called again, and defendant told him that Harry Cultice had the contract, and he said:

" I would figure it reasonable, because he was a good fellow,—a hard worker; and I told him, if I could not figure it as low or lower than anybody else, I did not propose to have any preference over any one else.    If I could figure it as cheap, I would like to have him use his influence to let me have the job."

Quackenbush then found Cultice, got from him a bill of the lumber, gave to Cultice a figure for it, and Cultice awarded the contract to Quackenbush.

" *Q.* (to Quackenbush).    What did Mr. Closterhouse say about the payment of this lumber?

" *A.* He said, as fast as the lumber was being delivered there, and the contractor O. K.'d the bills he would pay them.

" *Q.* When was that?

" *A.* That was when I first saw him; that is, not when I first saw him, but before that,—this talk."

Quackenbush further testifies that he went over to plaintiffs, handed the bill to one of the firm, and asked him what he would furnish that bill for, and—

"He told me he would figure it or furnish it for so many dollars and cents, and I told him that is just what I had agreed to."

" *Q.* Who were you working for at the time you came in the office, and talked with Mr. Closterhouse?

" *A.* Well, I was working for different lumber firms, and I was also working for myself. * * * * * * *

"*Q.* And then you figured on it, and handed in your bid?

"*A.* Yes, sir.

"*Q.* Who did you hand your bid in to?

"*A.* Mr. Cultice.

"*Q.* Did you tell him where you were going to get the lumber at that time?

"*A.* No, I did not.

"*Q.* Didn't you state to him that you were going to get the lumber from Muskegon?

"*A.* I said I could get it in Muskegon, I could get it in Cadillac, and get it from the lumber firms here in the city. * * * * * * * * * * *

"*Q.* Who were you working for at that time?    Were you working for Peirce & Co. at that time?

"*A.* I placed the order—

"*Q.* Just answer my question.    Were you working for Peirce & Co. at that time?

"*A.* Why, certainly, I supposed I was.

"*Q.* Weren't you doing a commission business,—taking orders, and placing them with different people,—either in Cadillac or Muskegon or Grand Rapids, wherever you could do the best, and make the most money?    Is not that a fact?    Weren't you working for yourself?

"*A.* I suppose I was working for myself.    That same time I had an understanding with Peirce & Co.    *    *

"*Q.* Was it not your intention to get it from Muskegon, and he was in such a hurry that you had not time?

"*A.* Yes.

"*Q.* You told Mr. Cultice you were going to send to Muskegon and get this, didn't you?

"*A.* When I first talked with him,—Muskegon or Cadillac.    I would not say that I said Muskegon, particularly. I might have mentioned Muskegon, and I might have said Muskegon alone."

Neither Quackenbush nor plaintiffs had any further conversation with defendant until after the lumber was furnished, and a bill therefor was sent to defendant in May following, when defendant at once repudiated it.

1. Plaintiffs could not recover as assignees of Quackenbush, under the declaration.    *Blackwood v. Brown,* 32 Mich. 104; *Rose v. Jackson,* 40 Id. 29; *Cilley v. Van Patten,* 58 Id. 404.

2. Quackenbush cannot be said to have made the contract in behalf of, or as the agent of, plaintiffs.    He made the proposition to Cultice in his own name, and not for plaintiffs.    He had no authority to make a contract which would bind plaintiffs.    He fixed the rates, and after he had made the contract with Cultice he went to plaintiffs, and inquired what they would furnish the bill for.    In any view, he was only to receive commissions on such orders as plaintiffs accepted.    They were not bound by his rates.    When he closed the contract with Cultice he intended, as he says, to get the lumber at Muskegon or

Cadillac.   He had the option to place the order or get.
the lumber wherever he chose.   He was under no obligation
to get it from plaintiffs.   If he had afterwards refused to
perform, neither Cultice nor defendant could have looked
beyond him.

The judgment is reversed, and a new trial granted.

HOOKER, C. J., LONG and GRANT, JJ., concurred.
MONTGOMERY, J., took no part in the decision.