JAMES L. GILBERT, GEORGE J. CROWELL, AND GEORGE
P. GLAZIER v. F. WILLIAM LICHTENBERG
AND CHRISTIAN LICHTENBERG.

*Partnership—Right of action—Sale—Statute of frauds—Acceptance.*

1. A suit lies in the firm name to recover the price of goods belonging to the partnership, and sold by one of the partners without disclosing the joint ownership, subject to the like defenses as if the partner had sued therefor in his own name. '
2. Where a quantity of onions are sold by sample, and stored in one lot, to be shipped on the order of the vendees, the delivery and acceptance of one car-load saves the sale from the operation of the statute of frauds, and passes the title to the entire lot to the vendees.

Error to Wayne. (Hosmer, J.) Argued December 13, 1893. Decided January 9, 1894.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*John G. Hawley,* for appellants.

*Bowen, Douglas & Whiting,* for plaintiffs.

LONG, J. On the last day of February, 1892, James L. Gilbert, a produce dealer of Chelsea, Mich., called at the office of the defendants in Detroit, and made a bargain for the sale of three car-loads of onions, to be delivered f. o. b. cars at Chelsea. It was agreed that the onions were to be similar to others which defendants had received from Gilbert the fall before. They were to be shipped from Chelsea whenever directed by defendants. Two car-loads were shipped and paid for. The third car, it is claimed,

98 MICH.—27.

was not accepted, but was received and sold by defendants for the purpose of realizing from the onions as much as possible for the benefit of Gilbert, and not as an acceptance. The defendants refused to pay for the last car more than was realized on the sale. Suit was brought by plaintiffs, and verdict and judgment rendered in their favor for the amount claimed by them.

Defendants' testimony tended to show that their dealing was with Gilbert, and not with the plaintiffs; that they had had dealings with him the fall before, and knew nothing of his connection with the plaintiff firm, and were not advised that they were dealing with such firm at the time these onions were purchased, but that they were advised by Gilbert, at the time of the purchase, that Mr. Glazier had advanced money on the onions, and would draw for it. On the part of the plaintiffs, Mr. Gilbert testified that he told defendants of this partnership, and that the onions sold were the property of the firm. Upon this point the court directed the jury that the testimony showed that the property belonged to the plaintiffs, and not to Mr. Gilbert individually; and that the defendants had done nothing in the case, upon the faith of the onions belonging to Gilbert individually, which would estop the plaintiffs from setting up the ownership; and that therefore that question was eliminated from the case. This ruling is assigned as error. Defendants' counsel claims that this question falls within the ruling of this Court in *Peirce v. Closterhouse*, 96 Mich. 124. It appeared in that case, however, that the party through whom the contract was made claimed to have made it in his own name, and that he had no authority to make a contract which would bind the plaintiffs; but in the present case Gilbert was a member of the firm, and the firm actually owned the property in controversy. Gilbert, as a partner, had a right to make a sale, and bind

the plaintiffs in the transaction, and defendants could set up the same matter of defense as they could set up had Gilbert sued in his own name. The court was not in error in thus directing the jury.

The more important question arises upon other parts of the charge. Defendants' testimony tended to show that when Mr. Gilbert came to their office he said he had three car-loads or more of onions to dispose of, and wanted defendants to handle them; that Gilbert stated they were as good as those sold them the fall before; that defendants had a quantity of onions on hand, and told him, if he would give them time to take these,—such time as they could use them in shipping them out,—they would buy them, and made him an offer of 70 cents a bushel f. o. b. cars at Chelsea, which he accepted; that the first car came and was disposed of, and the second was received and paid for, but defendants had some little difficulty in disposing of them, when they called Mr. Gilbert by telephone, and asked him to bring a sample of the onions, which he did a day or two afterwards; that these samples looked all right, except a few, which showed an indication of sprouting; that Mr. Gilbert was then told that he had better ship the car-load to defendants at Detroit, instead of Evansville, Ind., where they intended to dispose of them, as the onions would have to remain too long in the car if shipped to the latter place; that the onions were shipped to Detroit, and defendants found they were nothing like the samples shown them, but were soft, rotten, and "mushy;" that they at once called Mr. Gilbert to Detroit, and he arrived there two or three days after; and that, while there, Mr. Gilbert told them they had better sell them out, but that he was not prepared to settle on the onions, as Mr. Glazier had advanced money on them; and that the onions were sold out, and defendants realized, net, for the whole car-load, $124.40. There is no dispute

in the record but that the defendants sold them to the best advantage for all parties concerned.

The plaintiffs claim—and gave testimony tending to show the fact—that, when the order came from defendants for the purchase of these three car-loads, they were set aside and retained, to be shipped to defendants whenever they desired, and to such points as they desired; that two car-loads were shipped, and were apparently all right; that, when the last car-load was loaded at Chelsea, the onions placed therein were sound and marketable in every respect. Mr. Gilbert testified for the plaintiffs that, at the time the arrangement was made for the sale of the onions, they were stored in the warehouse in crates,—a bushel in each crate; that he told defendants, upon two occasions after the sale, that the onions ought to be shipped on account of the warm weather, which caused them to sprout easily, and that they were anxious to get them away; that two car-loads were shipped, but that the last car did not go forward until about the 4th of April; that he had the onions sorted over, and all the soft and unsound ones taken out. He admitted taking the sample to defendants, and testifies that the onions put in the last car were just as good as the sample. He admitted going to Detroit again at defendants' request, and saw that the onions were in a bad condition. He says:

"They were so much worse than I expected, I said that I would go home and consult my partners, and, if there was any proposition to make, I would make it; and I wrote him on the morning of the 11th that I had none; that the onions were his from the day I sold them. That is all the instruction I ever gave him."

Upon all the testimony given, the court charged the jury substantially that a contract of sale for more than $50 had been made, and that, until a part was accepted, it would come under the statute of frauds, but when the first car was delivered, if they believed plaintiffs' theory, it vested

the title to the rest in the defendants; and, if they found that it was the intention of the parties that the title should pass at the time of the contract, then the plaintiffs would be entitled to recover, if they also found that the onions, as they existed at the warehouse at that time, were equal to the onions which were contemplated by the parties when they had the conversation respecting the sale. The court also instructed the jury that, if they believed the testimony of the defendants, they might infer from it that the title did not pass at the time of the acceptance of the first car, but that the obligation was on the plaintiffs, at the time of the subsequent orders, to deliver onions of like quality as those which had been contracted for; that if they believed the contract was executory, and the onions were to be kept and furnished as good as those provided the fall before, up to the time defendants might thereafter order them, then they could inquire into the condition of the last car at the time the onions were placed on board the car at Chelsea; that if the jury should find that the warranty extended to the time the onions were placed on board the car at Chelsea, and that they were up to the stipulated quality, plaintiffs could recover the full amount, but, if the onions were not up to that quality, plaintiffs would be entitled to recover only their reasonable value. The court instructed, further, that if it was true that Gilbert examined the onions at Detroit, and ordered them sold in any event, then, if they were not up to the sample, defendants would be justified in refusing them, and plaintiffs would be limited in the amount of their recovery to the amount they sold for.

The court was asked by plaintiffs' counsel to charge the jury that if they believed that there was unreasonable delay in ordering the onions, and by reason of this fact they depreciated in value, the defendants must suffer the loss. The court, in giving this request, added:

"That would be true if you find, with reference to that, it was the intention of the parties that the three cars of onions should be sold as they lay there in Chelsea, and that the title of the onions had passed at that time; but if you find from the contract in question that it was contemplated that Lichtenberg should order the onions as he should thereafter sell them or desire them, and that the warranty should extend to the time of order, then that request would have no force. It all depends upon what you believe the contract between the parties was. Of course, under any testimony, the title of the onions would vest in Mr. Lichtenberg, subject to the right of rejection if the onions were not such as were called for, the moment they were placed upon the car at Chelsea."

The court was also requested to charge, by plaintiffs' counsel:

"If you believe the onions, when loaded into the car, were merchantable onions, then from the moment of the loading they were defendants' property, and they must suffer any subsequent deterioration."

The court, in giving this, stated to the jury:

"That is true with this limitation,—that is, that the onions were such onions as were contemplated by the contract between the parties, whatever you believe the contract to be. At all events, there was a performance at that time of the contract on the part of the plaintiffs; and if the deterioration occurred from the time the onions were delivered to the railroad company at Chelsea, down to the time they were delivered to Mr. Lichtenberg, why, then, the loss would be the loss of Mr. Lichtenberg, and not the loss of the plaintiffs."

It is contended that the court was in error in directing the jury that, if they believed plaintiffs' theory, it was an executed sale of the whole lot when the first car was delivered, and, if the onions were up to the sample, the plaintiffs would be entitled to recover the whole amount claimed. In this we think the court was not in error. The plaintiffs had nothing further to do than to make delivery when the defendants were ready to receive them.

The onions were put in crates into the warehouse, and kept in that condition, awaiting the orders of defendants to send them forward. Everything depended upon the action of the defendants. If they had been destroyed by fire, it would have been the loss of defendants after they had accepted a part of them. The delivery and acceptance of one car was an acceptance of a part of the whole lot sold. They were not kept separate by car lots, but this car-load was a part of the whole, and its acceptance such as to bring the contract out of the statute of frauds. If the plaintiffs' testimony was true, there was a sale of the whole lot,—a little more than three car-loads, as Mr. Gilbert expresses it,—and the title to the whole lot passed at that time. *Whitcomb v. Whitney*, 24 Mich. 486. This question was properly submitted to the jury. We find no error in the charge.

Judgment is affirmed.

The other Justices concurred.