**William F. Zibell, Trustee, for use of E. L. Loewen, Defendant in Error, v. Western Steel Car & Foundry Company, Plaintiff in Error.**

### Gen. No. 14,671.

1. MUNICIPAL COURT—*what statement of facts should contain.* It is the evidentiary, as distinguished from the ultimate facts, that the trial judge should certify up in the statement of facts; to hold otherwise would bind the Appellate Court to the conclusions of fact found by the trial judge of the Municipal Court.

2. CONTRACT—*when custom does not enter into.* A general custom does not enter into an express entire contract free from ambiguity or uncertainty and complete in itself.

3. PARTIES—*who cannot sue upon contract.* One not a party to a contract and who has not received it by assignment cannot maintain an action thereon nor can a general custom so affect a contract not ambiguous or uncertain but complete in itself as to enable several parties to sue thereon in their own names on the ground that they have furnished certain portions of the merchandise therein specified.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed December 7, 1909.

**Statement by the Court.** Action was brought in the Municipal Court of Chicago by William F. Zibell, trustee of Illinois Hardwood Lumber Company, defendant in error, against the Western Steel Car & Foundry Company, plaintiff in error, to recover the purchase price for 7,530 feet of lumber sold and delivered by the Illinois Hardwood Lumber Co. to the defendant car company. The trial was before the court without a jury and resulted in a finding and judgment in favor of the plaintiff and against the defendant for $275.85.

It appears from the record that the defendant car company was, in October, 1905, in the business of building freight cars, and that it desired to purchase a certain quantity of ash lumber of specified dimensions. It asked F. J. Shead, of the Shead Lumber Association, by telephone or letter, for a quotation on the lumber, stating how much was wanted. Mr. Shead went to see one Frank M. Creelman, who was in the business of buying and selling lumber in Chicago, doing business in his own name. Shead stated to Creelman what lumber the car company wanted and asked him to make a price on it, including his—Shead's—commissions. Creelman gave him a price of $45 per thousand feet. Shead returned to his office and under

date of October 16, 1905, sent to the car company the following quotation: "We are pleased to quote you on the following for immediate acceptance, 1st and 2nd Ash 10,200 pcs. 2x3¼x7' or 14' $45.00."

The next day the Car Company sent to the Shead Lumber Association a purchasing agent's order as follows:

"Please furnish this Company the articles specified below, making bills in triplicate on our forms, showing our order and requisition numbers and mailing same direct to Purchasing Agent, 1480 Old Colony Building, Chicago, Ill.    Send Bills of Lading and Shipping Notices to Superintendent, Hegewisch, Ill.
\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Quantity.                         Specifications.
10,200    Pcs. First and Second Ash 2 x 3¼ x 7' or 14'
                                    Rough.

The above to be free from unsound or defective knots.   This stock is to be cut immediately and put to drying until instructions are received from us to make shipment.

Price:   $45.00 per M. Ft.

Terms:   60 days net or 2% for cash 10 days from receipt of material.

Delivery:   Later.

Account:   2550 Harriman Box Cars.   O. O.   No. 1946.

            Confirming verbal order to Mr. Shead.
CHS-S
                    Received
                    Oct. 18, 1905.
            Answered   .   .   .   .   .   .
            Acknowledged   .   .   .   .
            Entered 10/17   .   .   .   .
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Consign to Western Steel Car and Foundry Company, Hegewisch, Ill.

Route Shipment via   Later

                              A. P. BOWEN,
                              Purchasing Agent.

Prices F. O. B. Hegewisch, Ill.   Order Number must be marked on each package.   Invoice must be ren-

dered same day material is shipped. No charges allowed for drayage or package. Please sign and return at once the attached receipt for this order.

Deliver no material without a written order properly signed by Purchasing Agent.''

Shead then made out a written acknowledgment of this order and sent it to the Car Company, as follows: ''Have received and entered your order No. A-706 for execution as herein specified. Our order No. 252. Date received Oct. 18, 1905. Shead Lbr. Assn.'' He also made out and gave to his stenographer to mail to Creelman a copy of the order, and the following letter:

''Oct. 18, 1905.

Mr. F. M. CREELMAN,
     Ry. Exchange, City.
DEAR SIR:—

Beg to enclose you herewith our formal order No. 252 covering some ash strips to the Western Steel Car & Foundry Co.

As to the delivery of this shipment, it will not be asked before Jan. 1st, and possibly Feb. 1st, and for this uncertainty, they have not specified any particular time of shipment in their order, but we assume the longer time we are given in which to dry the material, the greater will be a saving in the freight to you.

Yours truly,
THE SHEAD LUMBER ASSOCIATION.''

Later, on December 19, 1905, the Car Company instructed Shead Lumber Association by letter to ship the lumber covered by the order immediately. Shead then called up Creelman on the telephone and told him ''to get out the lumber for us.''

Some time later a car of lumber corresponding in dimensions and price to the lumber described in the order of the Car Company was delivered to the Car Company with the following invoice:

''ORIGINAL.

Render bills in triplicate upon this form and mail immediately on shipment of goods to the Purchasing

84      Appellate Courts of Illinois.

Zibell v. Western Steel Car & Foundry Company, 152 Ill. App. 80.

Agent, Western Steel Car and Foundry Company, Hegewisch, Ill. Send bills of lading and shipping notices to Superintendent, Hegewisch, Ill.

Pur. Agt. No. 28497

INVOICE FOR MATERIALS.

Shipper's No.................

Date, Jan. 19th, 1906.

Shipped by F. M. Creelman,
1529 Ry. Ex. Building, Chgo.

Loaded at ..............'. in I. C. Car No. 24559.

Routed via....................and consigned to the Western Steel Car and Foundry Company at Hegewisch, Ill., on their Order No. A-706, Requisition No. ................

Terms: 60 days or 2% for cash in 10 days from date of bill of lading. Delivery F. O. B.............

1986 pcs. 2 x 3¼—7'—7530' at $45.00..........338.85

On order from Shead Lumber Assn.''

Another invoice, different in form, was also introduced in evidence, but both invoices agree in the material statements that the car was shipped by F. M. Creelman to the Car Company, and the number of the car loaded with 1986 pieces of the lumber described in the order to the Shead Lumber Association, at the price quoted by Creelman to Shead and by Shead to the Car Company, and both invoices state that it is "On order from Shead Lumber Association." At this time there was no other order for lumber of any kind pending between the Shead Lumber Association and the Car Company.

A few days after the receipt of this car of lumber the Car Company wrote to Shead Lumber Association under date of February 3, 1906, as follows: "Please furnish us, over your signature, authority to make payment to F. M. Creelman for I. C. Car No. 24559 shipped to apply on our order A-706." The Shead Lumber Association replied: "Replying to yours of the 3rd inst. relative to payment for car No. 24559 to apply on your order No. A-706, would suggest that you withhold the payment of this money until we

know what will be done with the balance of the lumber due on this order.''

No more lumber was shipped upon the order by either Shead Lumber Association, F. M. Creelman or Illinois Hardwood Lumber Company. The defendant purchased a part of the balance of the order on the market at a price equal to the contract price, leaving the balance, approximately 26,437 feet, unfilled.

February 17, 1906, Frank M. Creelman and Illinois Hardwood Lumber Company, which was organized and commenced business in December, 1905, failed, and separate petitions in bankruptcy were filed against them. Zibell, plaintiff, was appointed trustee of the Illinois Hardwood Lumber Company.

SHERIFF, DENT, DOBYNS & FREEMAN, for plaintiff in error.

WHITMAN & HORNER, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

There appears in the record filed a transcript of the evidence given and proceedings had on the trial of the cause to which is appended a certificate that ''the above and foregoing is a correct statement of the facts appearing upon the trial of the said cause, and of all questions of law involved in such case, and the decision of the court upon such questions of law, this 11th day of May, 1908, and the said statement of facts is hereby signed by me and placed on file.''

It is contended by counsel for the plaintiff below, defendant in error here, that assuming that the certificate of the judge to the document makes it a statement of the facts and of the questions of law and the decisions of the court upon the same, so far as it is to be regarded as a statement of facts, it only states evidentiary facts, and therefore cannot present any basis upon which to predicate error in this court, in the absence of the ultimate facts found by the court.

86    APPELLATE COURTS OF ILLINOIS.

Zibell v. Western Steel Car & Foundry Company, 152 Ill. App. 80.

Counsel also take the further position that if the document signed and placed on file by the trial judge contains a statement of the ultimate facts appearing on the trial, they appear in what on their face and inherently are statements purporting to be statements of the court; and that this court must confine its examination of the record to such ultimate facts, which, as counsel contend, sustain the judgment of the trial court. This implies, and it seems to be the argument of counsel, that this court is precluded from an investigation of the evidence presented on the trial, for the purpose of passing upon the merits of the case. We cannot regard this construction of the provisions of paragraph sixth of section 23 of the Municipal Court Act as sound. In our opinion the provisions authorizing "a correct statement * * * of the facts appearing upon the trial" means not only the facts which the trial court found from the evidence, but the substance of the evidence as given by each witness. To hold otherwise would be to bind this court absolutely by the conclusions of the trial court as to the facts. This is not the meaning or intent of the act. This court is as free to investigate and decide upon the merits of the case where this statement of facts is filed, as where "a correct stenographic report" or a bill of exceptions is filed.

In the view we take of this case it is necessary to consider one question only presented by the record and arguments of counsel, namely, what legal right has Zibell, as trustee in bankruptcy of the Illinois Hardwood Lumber Company, to maintain the action against the Car Company for the price or the value of the carload of lumber delivered to it. It is too clear for argument or the citation of authorities that Zibell as trustee has no other or greater rights than the Illinois Hardwood Lumber Company, the bankrupt. The question then is upon the evidence in the record, could the bankrupt, if the proceedings in bankruptcy had not been instituted, maintain an action? This

question must, in our opinion, be answered in the negative.

The evidence both oral and documentary shows that the order for the lumber was given and accepted in October, 1905. It further shows that the contract was an entire contract between the Car Company and the Shead Lumber Association, and that it was so recognized and treated by the parties. The Illinois Hardwood Lumber Company was not in existence when the contract was made, and was not and could not be, a party to the contract, and did not, and could not, have any interest in it. The Hardwood Lumber Company was organized and commenced business December 4, 1905, but it took no assignment or purported assignment, oral or written, of the contract between the Shead Lumber Company and Creelman, or of the contract between the Car Company and Shead Lumber Company. The evidence shows no transfer or novation of contractual rights, nor even an attempted transfer, from the Shead Lumber Company to Creelman or by Creelman to the Illinois Hardwood Company at any time. But, if there had been an assignment of the contract, the Hardwood Lumber Company could not have maintained the action in its own name. City of Carlyle v. Carlyle W. L. & P. Co., 140 Ill. 445.

The trial court held, and the plaintiff, defendant in error, contends that the Shead Lumber Association was a mere commission merchant and took the order from the defendant as such; that there was a recognized custom in the lumber trade whereby the Shead Association had the right to place the order with a number of different firms, if it saw fit; that it was also the custom recognized by the trade that the shipper of any portion of the order was to receive payment from the purchaser for what such shipper furnished; that Creelman and the plaintiff, Illinois Hardwood Lumber Company were one and the same party; that Creelman gave the Shead Lumber Association

88    APPELLATE COURTS OF ILLINOIS.

Zibell v. Western Steel Car & Foundry Company, 152 Ill. App. 80.

the price of $45 a thousand, but made no express contract for any definite amount of lumber, or if Creelman did make a contract he at most made a contract for a single car load lot for the Illinois Hardwood Lumber Company which it furnished to the Car Company and the Car Company accepted the lumber and used it, and therefore the plaintiff, Illinois Hardwood Lumber Company, had a right in law to maintain in its own name the suit upon an implied *assumpsit* for the value of the lumber.

In our opinion the evidence in the record does not support this theory in several particulars. To the propositions of law involved therein we cannot yield assent. We do not think that if such a general custom was established by the evidence, it would enter into an express, entire contract, free from uncertainty or ambiguity, and complete in itself, so as to give rights of action to several parties in their own names, on the ground that they furnished certain portions of the lumber specified in the contract, ''on the order from Shead Lumber Association.'' Roosevelt v. Doherty, 129 Mass. 301; Corbett v. Schumacker, 83 Ill. 403. ''A general usage may be proved in proper cases to remove ambiguities and uncertainties in a contract, or to annex incidents, but it cannot destroy, contradict, or modify what is otherwise manifest. When the intent and meaning of the parties are clear, evidence of a usage to the contrary is irrelevant and unavailing.'' National Bank v. Burkhardt, 100 U. S. 686; Bissell v. Ryan, 23 Ill. 517; Hedenberg v. Seeberger, 140 Ill. App. 618.

The effect of the custom or usage relied upon would be to add to, contradict and modify the express contract. It was inadmissible for that purpose.

Upon the evidence in the record the Illinois Hardwood Lumber Company or its trustee was not entitled to maintain the action. The judgment is reversed with a finding of fact.

*Reversed.*