W. J. Voit Rubber Company, Appellee, v. Peoria Coca Cola Bottling Company, Appellant.

Gen. No. 8,877.

Heard in this court at the
February term, 1935.                    Opinion filed
April 22, 1935.

E. E. HORTON, of Peoria, for appellant.

IRA J. COVEY, of Peoria, and WAYNE H. MATHIS, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The plaintiff is located in Los Angeles, California, and engages in the business of making and selling balls and other rubber goods. The defendant is engaged in business in Peoria, Illinois. The plaintiff bases its action against the defendant upon the allegations of its complaint, that the plaintiff sent to the defendant seven separate shipments of rubber balls between June 22 and July 11, 1933; that the shipments were accompanied by invoices stating the price and the description of the balls; that a statement, or bill, for the goods was also sent to the defendant by the plaintiff after three shipments were made by the plaintiff; that a final statement for all the balls shipped was sent to the defendant by the plaintiff; that the defendant received the balls, the invoices and the statements, and accepted, used and disposed of the said balls. The complaint charges that for the reason alleged in the complaint a contract is to be implied between the parties because of their conduct and dealings and that the defendant is liable for the invoice price of the balls.

The answer of the defendant denies the existence of an implied contract between the parties. It also alleges that the balls were not purchased by the defendant from the plaintiff, but that they were purchased from the Standard Distributors, Inc., of New York City, by written contracts between the defendant and the Standard Distributors, by virtue of which the latter undertook to furnish said balls and for which defendant was required to pay the Standard Distributors, only; that the plaintiff was not a party to the contracts between the defendant and the Standard Distributors. The answer further sets forth that the Standard Distributors, in order to perform its contracts with the defendant, entered into contracts with the plaintiff, to which contracts the defendant was not a party, for the delivery

of the balls by the plaintiff to the defendant; that pursuant to the contracts between the plaintiff and the Standard Distributors, the plaintiff sold said balls to the Standard Distributors and also delivered the balls to the defendant; that the defendant did not know the plaintiff in the transaction; that no privity of contract existed between the plaintiff and the defendant; and states further that the defendant purchased the goods under an express contract with the Standard Distributors and that the plaintiff has no cause of action against the defendant.

A replication was filed by the plaintiff to the effect that notwithstanding the facts set up in the answer, the defendant is liable to the plaintiff on an implied contract.

A trial before the court without a jury resulted in the court finding in favor of the plaintiff and judgment was entered against the defendant for $1,047.37, the total of the invoice prices of the goods less freight charges on the several shipments which were paid by the defendant upon their receipt by it.

It is argued to this court by the defendant that the judgment is contrary to law. The action is not based on the contracts between the defendant and the Standard Distributors and the plaintiff does not contend or claim that it is. Nothing appears in the contracts between the defendant and the Standard Distributors to indicate that these contracts were made for the benefit of the plaintiff. (*Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252.) These contracts have not been assigned by Standard Distributors to the plaintiff.

The contracts of the defendant and the Standard Distributors did not create any contractual connection or relationship between the defendant and the plaintiff. (*Zibell v. Western Steel Car & Foundry Co.,* 152 Ill. App. 80; *Peirce v. Closterhouse,* 96 Mich. 124, 55 N. W. 663.) It therefore remains to be determined if

the evidence shows that there was a contract of sale between the plaintiff and the defendant evidenced by, and to be implied from their acts as a matter of fact. It is to be observed that we have by the above statement eliminated from consideration in this case "quasi contracts," or contracts implied by law. (*People v. Dummer*, 274 Ill. 637.)

It may be stated, as a general proposition, that where goods are offered for sale by one party at prices named in invoices, and the other party, knowing those prices, receives and accepts the goods and exercises acts of ownership over them, a sale to said other party at the named prices is implied. *Genuine Panama Hat Works, Inc. v. Paragon Hat Co.*, 245 Ill. App. 531.

The only witness in the case was J. C. Brodnax, the treasurer and manager of the defendant company, who first testified as a witness for the plaintiff and afterwards testified for the defendant. From his testimony and the exhibits introduced in evidence it appears as follows: On June 10, 1933, the defendant, at the personal solicitation of A. Deitz, a representative of the Standard Distributors of New York City, entered into a written contract with the Standard Distributors under the terms of which the defendant ordered from the Standard Distributors certain posters and circulars and also "1,200 Balls at $.49 each." "Freight allowed." The contract contained the following: "Make checks payable only to Standard Distributors, Inc. This order subject only to terms herein and not subject to change or cancellation." On July 3, 1933, the defendant entered into another and similar contract with the Standard Distributors for 1,200 balls at 49¢ each. The first contract provided that the Standard Distributors would furnish free to the defendant 24 balls over the number ordered in this contract, and also furnish a specialty man for two weeks. On each of the 2,400 balls thus ordered there was to be a patch bearing the

words, "Drink Coca Cola in Bottles." Mr. Deitz told the witness Brodnax that the defendant would receive the balls from a factory in Los Angeles, California.

Upon receipt of its first contract with the defendant, the Standard Distributors on June 12, 1933, sent to the plaintiff a telegram which stated, "Rush twelve hundred twenty four balls drink Coca Cola in Bottles one patch to Peoria Coca Cola Bottling Company, Peoria, Illinois. Also rush eight hundred fifty two Coca Cola balls to Coca Cola Bottling Company, Bridgeton, New Jersey, New England Coca Cola Plant. Peoria special rush." On the same day the Standard Distributors sent to the plaintiff a requisition for 1,200 size 16 Coca Cola health balls, to bear a patch with the words, "Drink Coca Cola in Bottles" at the price of 49¢ each ball. The requisition was numbered 1,538. The requisition directed the plaintiff to ship and bill direct, freight allowed.

Upon receipt of its second contract with the defendant, the Standard Distributors on July 5, 1933, sent to the plaintiff a telegram to rush by freight 1,200 additional balls to the defendant. After sending the telegram, and also on July 5, 1933, the Standard Distributors sent a requisition to the plaintiff similar in import to the first requisition. The second requisition was numbered 1,573. Both requisitions stated that all invoices must bear the requisition number of the Standard Distributors. The second requisition stated that it was a confirmation of the telegram sent to the plaintiff on July 5, 1933.

When the plaintiff received the first requisition for the 1,200 balls from the Standard Distributors, it made shipments of balls to the defendant: on June 22, 384 balls, on June 23, 648 balls, and on June 24, 168 balls. On receipt of the second telegram from the Standard Distributors, the plaintiff made shipments of balls to the defendant: on July 7, 120 balls, on July 8, 168 balls,

on July 10, 576 balls, and on July 11, 336 balls, thus making a total of 2,400 balls shipped by the plaintiff to the defendant as shown by the invoices introduced in evidence by the plaintiff. Brodnax testified that the defendant received from the plaintiff 2,424 balls.

Each of the shipments was accompanied by an invoice which stated, "Sold to Peoria Coca Cola Bottling Company, Peoria, Illinois." The first three invoices accompanying the first three shipments each state "Order No. 1538–39." The invoices with the shipments dated July 7, and July 8, each state "Order No. Wire." The invoices dated July 10 and July 11 state, "Order No. 1573."

After the plaintiff had shipped to the defendant 1,200 balls as shown by the first three invoices, it prepared a statement, or bill dated at Los Angeles, California, June 30, 1933, for those invoices dated June 22, 23, and 24, for a total of $588, the price of the 1,200 balls at 49¢ each. The defendant admits receiving that statement in the regular course of mail delivery, but if it was received before or after the defendant executed the second contract with the Standard Distributors on July 5 for an additional 1,200 balls does not appear in evidence. As the last four shipments were made on July 7, July 8, July 10 and July 11, as is shown by the freight bills, it is a reasonable inference that the defendant received the statement by mail before he received any of the four last shipments by freight.

Prior to this time the defendant had not ordered any balls from the plaintiff. The defendant neither notified the plaintiff that it would not accept the balls shipped nor pay for them. The plaintiff had not informed the defendant that it had received telegrams and requisitions from the Standard Distributors from which the plaintiff inferred that the defendant would receive the balls from the plaintiff and that it would hold the defendant liable for the price of the same nor any other

word that the plaintiff looked to the defendant for pay for the balls excepting the invoices sent with the goods and the bill rendered as above mentioned. Evidently, neither party gave the transaction any more attention than in the usual routine conduct of their respective business affairs.

Upon receipt of these several shipments of balls the defendant did not return them to the plaintiff. On July 31, 1933, the plaintiff mailed to the defendant a bill showing a balance of $588 for the first 1,200 balls shipped and gave the invoice numbers of the last four shipments with the amount due on each, showing in all a total due the plaintiff of $1,176. The witness Brodnax also testified that these were the balls which he had ordered from Standard Distributors, together with the 24 free balls. He further testified that Standard Distributors had directed him to send all the balls which he did not need to other Coca Cola Bottling plants, and that for all the balls so sent the defendant would receive credit memoranda. Thereupon the defendant sent 516 balls to the Danville Coca Cola Bottling Company; on July 27, 1933, the defendant shipped 288 balls to the Blythesville Coca Cola Bottling Company; on August 11, defendant sent to Coca Cola Bottling Company of Hot Springs, 204 balls; on July 29, defendant sent 804 Balls to Little Rock Coca Cola Bottling Company; on July 24 the defendant sent 24 balls to Cairo, making a total of 1,836. The Standard Distributors credited the defendant's account with 1,836 balls, as was shown by credit slips issued by the Standard Distributors to the defendant. The remaining 564 balls the defendant retained. Some of the balls were defective, for which the defendant was not charged by the Standard Distributors. Standard Distributors sent to the defendant a bill for $217.56 less freight paid of $128.63 leaving $88.93 due for 444 balls at 49¢ each. The amount of the bill was paid by the defendant to

the Standard Distributors by check dated August 2, 1933, and a receipted statement was returned to the defendant by the Standard Distributors. The defendant also paid the Standard Distributors for circulars and posters ordered from them. A contract of sale, whether express or implied, must contain the essential elements of a contract—an offer and an acceptance of the offer. The offer must be communicated to the one who is to be the acceptor thereof, and its communication must be under such conditions that the one who receives it is aware that an offer to enter into a contract has been made to him. An implied contract in fact cannot be thrust upon a person by the courts without his consent. Unless it appears that his intention was to enter into contractual relation with another we cannot say that he has done so. It is true that where it appears that one has in fact made an offer to another person and such person, by his acts or conduct, has accepted the offer, with the understanding that an offer has been made to him, it will be held that the latter has entered into a contract. The acceptor has then spoken by his conduct and he will not be heard to deny that he has not accepted the offer; his acceptance of the offer is implied from his conduct.

As before indicated, we are of the opinion that reason and justice, under the circumstances in this case, do not dictate that an obligation should be imposed, as a matter of contract implied by law, on the defendant to pay the plaintiff for the balls without the consent of the defendant. (*People v. Dummer, supra.*)

The defendant had entered into an express and clear contract with the Standard Distributors for 2,400 balls. The defendant had never before June 22, 1933, received any merchandise from the plaintiff nor had any dealings with it. On the arrival of the invoices with the shipments of the balls there were Order Numbers which were strange to the defendant which did not

refer to any orders given to the plaintiff. The defendant was bound by its express contract to pay the Standard Distributors for the balls which it had ordered. Defendant had been informed by a representative of the Standard Distributors that the balls would be shipped to defendant from Los Angeles. Defendant had done nothing to induce the plaintiff to ship the balls to it. Under the facts and circumstances in evidence, we do not believe that it would be just to hold that the defendant was bound at its peril to consider the arrival of the balls at its place of business as an offer of the plaintiff to sell them the balls.

Furthermore the telegrams and requisitions sent to the plaintiff by the Standard Distributors are to us conclusive proof that some understanding between the Standard Distributors and the plaintiff motivated the plaintiff to ship the balls to the defendant and not the expectation of the plaintiff that the defendant would by his silent acceptance, or rejection, of the goods, either bind itself to accept the balls at the invoice prices or refuse to accept the alleged offer of the plaintiff. We are of the opinion that the plaintiff must look to the Standard Distributors for a recovery of the price of the balls.

Under section 92 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 220, this court may in its discretion, "give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief as the case may require."

The judgment of the circuit court of Peoria county should be, and is hereby reversed and judgment for the defendant entered in this court.

*Reversed and judgment here.*