PHILLIP W. MILLSAPS, a/k/a P. W. Millsaps, Plaintiff-Appellant, *v.* BANKERS LIFE COMPANY *et al.*, Defendants-Appellees.

Second District (2nd Division) No. 74-437

Opinion filed February 10, 1976.

Jordan & Miles, of Elgin, for appellant.

John M. Lamont and Wayne F. Weiler, both of Reid, Ochsenschlager, Murphy & Hupp, and Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, both of Aurora, and Gates W. Clancy, of Geneva, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal by plaintiff from an order dismissing Counts 1 through 6 of the second amended complaint against defendant, Dr. Jerry Cargill (Cargill), Count 7 against defendant, Retail Credit Company (Retail Credit) and Counts 10 through 12 against defendant, Bankers Life Company (Bankers Life). The dismissal order was entered upon the defendants' motions to dismiss and supporting affidavits filed by the parties. The trial court denied Retail Credit's motion to dismiss Counts 8 and 9, holding that these counts stated a cause of action as to which a fact issue existed. No cross-appeal was taken from that portion of the judgment and no further reference need be made to those counts.[1]

Plaintiff had applied to Bankers Life for major medical insurance coverage in February, 1971. His suit for actual and punitive damages against the defendants was based primarily on Cargill's letter of March 26, 1971. That letter read as follows:

"Enclosed is a summary of Mr. Millsaps recent hospitalization. Physically the man has no notable problems; emotionally, the patient is quite mercurial in his moods. He is a strong willed man obsessed with faults of others in his family, of which there has been no objective basis. He has completely resisted any construc-

---

[1] The record discloses that defendant, Retail Credit, subsequently filed its answer to Counts 8 and 9 of the second amended complaint.

tive advise [sic] by his wife, family, minister or myself. The man needs psychiatric help for his severe obsessions and depressions some of which have suicidial [sic] tones. He is extremely poor insurance risk."

The original complaint was filed on March 13, 1972, and asserted a cause of action based on that letter. An amended complaint was filed June 23, 1972, and the second amended complaint was filed thereafter.

In Count I plaintiff alleged that Cargill's letter of March 26 "contained false, scandalous, malicious libel * * * concerning the Plaintiff," and injured his reputation. Count 3 adds that Cargill's letter caused injury to his reputation as a real estate sales and insurance broker and alleged resulting loss of confidence and esteem of Bankers Life and of friends and acquaintances. Counts 2 and 4 are based on Cargill's two-page letter dated June 9, 1971, to one Jerry Boose and to the law firm of which Mr. Boose was a member, reciting medical history of the plaintiff and stating medical history of the plaintiff and stating in part as follows:

"Mr. Millsaps is quite rigid and absolutely uncompromising in his attitude. The patient continues weight loss and severe depression alternating with spells of extreme agitation wherein he would jump up and down in a frenzied manner or weeping uncontrollably. The serious neglect of his previously successful real estate business, his paranoid thoughts against his minister and wife and I am sure certainly toward me, are all evidences of severe personality disorder. If you can persuade this man to seek psychiatric help before further loss is sustained you would do him a great service."

(That letter was written in response to an inquiry from Attorney Boose who represented plaintiff at that time.) Counts 2 and 4 alleged that the June 9 letter contained false, scandalous, malicious and defamatory libel concerning the plaintiff, injured his reputation, and resulted in a loss of business in his profession and in the loss of the confidence and esteem of the addressees and of friends and acquaintances.[2]

In Count 5 plaintiff alleged that as part of his application for insurance he was required to have a physicial examination which was conducted by Cargill on February 18, 1971; that Cargill's March 26 letter was a false and improper diagnosis which, because of Bankers Life's refusal to issue the policy and its having "promulgated" the "false material" to "a central insurance agency for carriers * * * or directly to other insurance carriers," constituted unlawful interference with plaintiff's contract rights.

---

[2] The original complaint did not allege this cause of action; it was alleged for the first time in the (first) amended complaint filed June 23, 1972.

In Count 6 plaintiff alleged that Cargill, his physician, specialized in internal medicine and has no specialized training in psychiatry or mental disorders; that after treating plaintiff as his patient Cargill, in writing the March 26 letter, did not confine himself to his area of practice but was guilty of negligently and unskillfully diagnosing plaintiff's "mental attitudes," based on information he received from a certain clergyman, not on his own expert observation; and that as a result of Cargill's negligent conduct in making this diagnosis, plaintiff has been refused insurance by Bankers Life and other companies and will be required to pay increased insurance premiums.

Count 7 alleged that Retail Credit was engaged by Bankers Life (in connection with plaintiff's insurance application) to make a credit report; that it falsely reported therein that plaintiff's marriage was about to break up, that he was no longer living with his wife, and that plaintiff could not afford the insurance because of his financial condition; and that Retail Credit's publication of such report resulting in Bankers Life's refusal to issue the insurance policy to plaintiff constituted tortious interference with plaintiff's contract.

In Counts 10, 11, and 12 plaintiff sought actual and punitive damages from Bankers Life. Count 10 alleged tortious interference with contract in that Bankers Life "republished" the March 26 letter to a central clearing agent for insurance carriers, which plaintiff alleged, on information and belief, resulted in his inability to secure insurance from other carriers. Counts 11 and 12 alleged that Bankers Life's "republication" of the March 26 letter constituted malicious libel and resulting injury to his reputation (Count 11) and loss of business in his profession (Count 12).[3]

With regard to the motions to dismiss filed by all defendants, the trial court directed all parties to file memoranda of authorities and "any affidavits" in support of their respective positions. Plaintiff filed an affidavit to support the allegations made on information and belief in his complaint. Insofar as relevant, there were attached thereto copies of letters from two other insurance companies dated in May and June, 1971, declining plaintiff's application for insurance, as well as a copy of a letter dated in August, 1972, from the Illinois Department of Insurance notifying plaintiff of the cancellation of his surety bond in connection with his insurance broker's license.

---

[3] The original complaint filed March 13, 1972, alleged that Bankers Life "published" that letter "to various other insurance companies", without specifying any date therefor; in his (first) amended complaint, filed June 23, 1972, plaintiff alleged "republication" by Bankers Life of that letter to "a central clearing agent for insurance carriers" (Count 10), and "probably others" (Count 11).

Bankers Life filed four affidavits. Two of them had portions of plaintiff's depositions attached. From the other two affidavits the following facts appear: In connection with plaintiff's application for insurance to Bankers Life, he executed an "Authorization" dated February 15, 1971, directed to physicians or hospitals "from which" the applicant "received treatment or advice," to give Bankers Life's medical department "all information concerning my past medical history, symptoms, treatment, result of examination and diagnosis." Bankers Life had received a supplemental medical questionnaire from plaintiff dated March 15, 1971, in which he marked "X" in the "No" square to question 5(b) inquiring if, in the past five years, he had been a patient in a hospital or other facility. Plaintiff also listed Cargill as his personal physician whom he had consulted in January, 1971, on a personal problem which had caused insomnia and nervousness. Bankers Life's brokerage consultant, Verne Murphy, in his affidavit, stated that plaintiff did not tell Murphy of plaintiff's March 13 to March 15, 1971, hospitalization, and that plaintiff authorized changing the answer from "Yes" to "No" in answer to question 5(b) on the questionnaire, which change plaintiff then initialed on or shortly after March 15, 1971. After receiving the supplemental medical questionnaire Bankers Life's assistant medical director wrote a letter on March 22, 1971, to Cargill, requesting a medical history, including "complaints, objective findings, diagnostic impressions of record, and treatment prescribed." The letter also enclosed a copy of plaintiff's "Authorization" and a check for $5 "as an estimate of your charge for the services requested." In response, on March 29, 1971, Bankers Life received a letter from Cargill dated March 26, and a copy of a discharge summary, reporting plaintiff's admission to the hospital on March 13, a summary of symptoms, treatment, diagnosis, and reporting his discharge from the hospital on March 15, 1971. Bankers Life is a participating member of the Medical Information Bureau (MIB), a nonprofit association formed to conduct confidential interchange of information between its members. Bankers Life never supplied Cargill's letter of March 26 to MIB but merely reported a code number to it on May 4, 1971. Bankers Life had not received any request for information regarding the plaintiff from any insurer or other firm and after inquiring of MIB was informed that its records revealed no requests for information having been received up to the date of May 2, 1972, which was when the inquiry was made.

Retail Credit filed four affidavits which set forth matters relevant primarily to Counts 8 and 9 of the second amended complaint and therefore those need not be summarized here. The only facts relevant to this appeal are that after Bankers Life received Retail Credit's report

dated December 8, 1971, indicating among other things that plaintiff was living alone and that his financial condition was declining, Bankers Life requested a supplemental report regarding his financial condition and received such report dated December 17, 1971; that the amount of plaintiff's application was reduced from $100,000 to $25,000 because of the information in those reports regarding plaintiff's financial condition; and that the statement in the report pertaining to prior drinking problems did not affect Bankers Life's determination as to whether to issue the policy as requested by plaintiff.

The supporting affidavits filed by the defendants have not been challenged or contradicted by counteraffidavits. In such case, when considering a motion to dismiss under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 48) the facts stated therein must be taken as true. (*G. Chicoine Contractors, Inc. v. John Marshall Building Corp.*, 77 Ill. App. 2d 437, 440. See also *Fooden v. Board of Governors*, 48 Ill. 2d 580, 587.) In contrast, many of the allegations in the second amended complaint and the averments in plaintiff's affidavit, except for plaintiff's receipt of the letters, copies of which are attached to his affidavit, are made on information and belief; they are to that extent insufficient as against the positive averments of facts in defendants' affidavits. In *Fooden* the court stated:

> "[A]s against positive, detailed averments of fact in an affidavit, allegations made on information and belief by an adverse party are insufficient, for they are not equivalent to averments of relevant facts but rather put in issue only the pleader's information and belief and not the truth or falsity of the 'facts' referred to. [Citations.]" 48 Ill. 2d 580, 587.

■■ The defendants' motions for dismissal, supported by the affidavits above referred to, were based on various grounds including the following, which the court sustained in dismissing all but Counts 8 and 9 of the second amended complaint:

> (1) Cargill's letters of March 26 and June 9, 1971, were privileged as to Cargill and Bankers Life, not libelous, there was no publication in law of the March 26 letter and no republication thereof by Bankers Life, and there were no allegations to support the conclusion that it constituted malicious libel.
>
> (2) Any cause of action for libel based on Cargill's letter of June 9, 1971, was barred by the one year limitations' period (Ill. Rev. Stat. 1971, ch. 83, par. 14) because it was first asserted in the amended complaint filed June 23, 1972. Also, having been published in response to a request from plaintiff's duly authorized agent and therefore to himself, it was not actionable.

(3) No basis was alleged to state a claim against any of the defendants for tortious interference with contract because, among other things, there was no contract in existence.

(4) No basis was alleged to state a cause of action against Cargill for malpractice and false diagnosis because no physician-patient relationship then existed and no duty existed in favor of the plaintiff.

(5) The republication by Bankers Life to MIB (a central clearing agency for insurance companies) is lacking in specificity, is barred by the one year Statute of Limitations for libel, and is not sufficient to state a cause of action in libel.

We affirm.

■■ First we consider the applicability to Counts 2 and 4 which are based on Cargill's letter of June 9, 1971, of the one year limitation period relating to suits for libel and defamation (Ill. Rev. Stat. 1971, ch. 83, par. 14). The first assertion by plaintiff of that cause of action was made in the amended complaint filed June 23, 1972. A new cause of action first introduced by an amended complaint is regarded as a new suit commenced on the date the amended complaint was filed. (*Larkin v. Gerhardt,* 21 Ill. App. 2d 122 (abstract opinion). See also *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet,* 61 Ill. 2d 129, 131-132.) Inasmuch as the date of publication was more than one year prior to the date the amended complaint was filed, Counts 2 and 4 were barred by the statute of limitations. Moreover, we note in passing that the June 9 letter was directed to plaintiff's duly authorized agent, his then attorney, and written in response to the attorney's inquiry; as such, that letter is equivalent to a publication to plaintiff himself and therefore is privileged and is not actionable. (50 Am. Jur. 2d *Libel and Slander* §168 (1970). See also *Wuttke v. Ladanyi,* 226 Ill. App. 402.) Counts 2 and 4 were therefore properly dismissed.

■■ Plaintiff contends first of all that the defense of privilege asserted by Cargill and Bankers Life is not available on a motion to dismiss but "must be set up in the manner of an affirmative defense." Plaintiff has apparently overlooked the express provisions of section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 48(1)(i)). This includes as one of the possible grounds for involuntary dismissal, "[t]hat the claim or demand asserted  *  *  *  is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." This subparagraph makes clear that affirmative defenses (whether privilege or statute of limitations) may be raised by motion to dismiss under that section. See *Guaranty Mortgage & Security Co. v. City of Chicago,* 328 Ill. App. 276, 280-281.

Both Cargill and Bankers Life rely on the defense of privilege. In support of this contention they point out that plaintiff, in connection with his insurance application to Bankers Life, signed an "Authorization" to doctors and hospitals to furnish his "past medical history." Both plaintiff and Bankers Life contemplated the requirement of a complete medical report, including hospitalization. Bankers Life requested the medical report from Cargill based on plaintiff's authorization, and after receiving it from Cargill, on May 4, 1971, forwarded, as a member of MIB, not the March 26 Cargill letter, but a mere code number, and that such code number had not been inquired into by any insurance company up to May 2, 1972, which is after the filing of the original complaint.

Plaintiff contends that his "Authorization" bearing date of February 15 and referring to "past medical history" cannot be construed to authorize those matters which were disclosed in the March 26 letter resulting from plaintiff's execution of the supplemental questionnaire, and including his hospitalization between March 13 and 15, 1971, all of which occurred subsequent to the date of the authorization. We do not so construe its meaning under the circumstances here. Plaintiff had applied to Bankers for insurance. He was an insurance broker and was fully aware, when he made such application, that the state of his health prior to issuance of any insurance policy was an important factor. Indeed, after his first physical examination he filled out and he executed a supplemental medical questionnaire shortly after March 15 requesting further information, and therein supplied Cargill's name as his personal physician. It was therefore clear that plaintiff as well as Bankers Life and Cargill contemplated that plaintiff's February 15 authorization to disclose his past medical history applied to all such history prior to any action being taken on plaintiff's application for insurance.

■■ Thus, Cargill in supplying his March 26 report to Bankers Life did only what plaintiff authorized him to do and which Bankers Life had requested. It was therefore conditionally privileged. (See *Schlaf v. State Farm Mutual Automobile Insurance Co.*, 15 Ill. App. 2d 194, 199; *Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill. 2d 345.) Likewise the forwarding of a code number by Bankers Life to MIB, all of whose members had a common business interest and access to information concerning insurability of applicants for insurance, comes within the privilege doctrine. See *Judge v. Rockford Memorial Hospital*, 17 Ill. App. 2d 365, 377; 50 Am. Jur. 2d *Libel and Slander* §194 (1970); and 33A Ill. L.&Pr. *Slander and Libel* §52 (1970).

■■ It should also be pointed out that the other counts sounding in libel (1, 3, 11 and 12) were cast in the language of strict liability and

did not allege facts showing actual malice, negligence or other proper ground of liability. They were therefore legally insufficient for that further reason. (*Troman v. Wood*, 62 Ill. 2d 184. See also *Chapman, v. Huttenlocher*, 125 Ill. App. 2d 39, 46.) In the absence of allegations by the plaintiff showing a knowledge of falsity of the communication, or reckless disregard for the truth, there can be no recovery of presumed or punitive damages. (*Gertz v. Welch*, 418 U.S. 323, 348, 41 L. Ed. 2d 789, 810, 94 S. Ct. 2997.) Therefore, the court also properly dismissed the other libel counts, 1, 3, 11 and 12.

We consider next the propriety of the trial court's dismissal of the counts charging tortious and malicious interference with contract by Cargill (Count 5), Retail Credit (Count 7) and Bankers Life (Count 10). The gist of an interference action is that it was done with malice. (*W. P. Iverson & Co. v. Dunham Manufacturing Co.*, 18 Ill. App. 2d 404, 417.) Neither these counts nor plaintiff's supporting affidavit set forth any facts showing malice. In *Bergfeld v. Stork*, 7 Ill. App. 3d 486, 490-91, the court said:

> "In the present case there is nothing alleged from which it could be inferred that defendant had such interest in the business relationship of Steik and plaintiffs that his motive was to cause a breach of that relationship, nor from which it could be inferred that his purpose was to cause such breach, and there is nothing to show any ill will toward plaintiffs. * * *
>
> A motion to dismiss does not admit conclusions of law or fact unsupported by allegations of specific facts upon which such conclusions rest [citations], and a mere averment that an act was done with a certain purpose or intent, without a statement of the facts showing such purpose or intent, is a conclusion of law." (7 Ill. App. 3d 486, 490-91.)

The court concluded therefrom that plaintiff did not allege sufficient facts which showed that defendant intentionally and maliciously induced the breach of plaintiff's contract.

■■ Similarly, in the instant case nothing is alleged from which it could be inferred either that Cargill or Retail Credit had any interest in plaintiff's relationship with Bankers Life, or that their purpose was to cause a breach in such relationship, or that they bore any ill will toward plaintiff. Neither are there any facts alleged from which it could be inferred that Bankers Life's transmittal of a code number to MIB was prompted by malice so as to constitute tortious interference with any contract relationship plaintiff was hoping to enter into either with Bankers Life or some other insurance company. Moreover, no contract had ever come into being. While virtually any type of contract is suf-

ficient as the foundation of an action for procuring its breach, a contract must, of course, be in force and effect. (Prosser, The Law of Torts §129 (4th ed. 1971.) Therefore, Counts 5, 7, and 10 were properly dismissed by the trial court.

██ Finally, we consider the propriety of the dismissal of the count charging Cargill with malpractice (Count 6). It does not allege that plaintiff was injured in body or health by any act or omission of Cargill, his physician. He merely alleges in substance that by reason of Cargill's negligent, careless and unskilled diagnosis of plaintiff in the March 26 letter, Bankers Life, and other insurance companies, declined to issue plaintiff any insurance. Those allegations do not state a cause of action for malpractice. Actionable malpractice arises only when the patient is injured in body and health by reason of the breach or improper performance by a physician or surgeon of his professional duties of skill and care. (*Borowski v. Von Solbrig*, 14 Ill. App. 3d 672, 677.) The trial court therefore properly dismissed Count 6 of the second amended complaint.

For the reasons stated in this opinion the judgment of the trial court is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.