HARRY KILBANE *et al.*, Plaintiffs-Appellants, *v.* ROBERT SABONJIAN, Defendant-Appellee.

Second District (1st Division)   No. 74-349

Opinion filed May 20, 1976.

William L. Smith, Jr., and Barry B. Kreisler, both of Holobow & Taslitz, of Chicago, for appellants.

John E. Schultz, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Two brothers, Harry and Frank Kilbane, filed a complaint against Robert Sabonjian whereby they sought $1,000,000 damages for slander. The defendant filed a motion to strike and dismiss the complaint, supported by affidavit, based upon truth, fair comment, innocent construction, privilege, and the failure to allege special damages specifically and with particularity. In support of their complaint two affidavits were filed on plaintiffs' behalf. Following a hearing on defendant's motion the trial court entered the order from which plaintiffs appeal, dismissing their complaint with prejudice.

Plaintiffs' basic contention on appeal is that the trial court improperly

dismissed their complaint on the pleadings because the issues raised by defendant's motion to dismiss present ultimate issues of fact which must be determined by a jury.

The record in this case indicates that in February, 1973 Harry Kilbane caused four articles to be published in the Waukegan News-Sun newspaper. These articles stated that they were paid for by Harry Kilbane and were variously titled "Harry Kilbane to the Taxpayers of Waukegan." The articles were run during the campaign of the defendant Sabonjian for reelection to a fifth term as mayor of the City of Waukegan and a few days prior to a primary runoff election. The articles criticized the defendant for wasting taxpayers' money and blamed the defendant for the bad sanitary sewer system in the Lake County Gardens Subdivision. The article published on February 20 alleged that the sewer problems were caused by a landfill site having been constructed in a swampy area, and that defendant was responsible for the construction of the landfill site. In their complaint plaintiffs alleged that Harry Kilbane had served the public in several capacities, including service as a member and chairman of the City of Waukegan Planning Commission.

On February 23, 1973, the defendant spoke on a radio program and made the following statement, which is the basis of the instant suit:

"Now, one of the sewer problems, sorespots of the sewer problem in the City of Waukegan I can attribute to my opponent, his very cagey campaign manager, the man who's always second-guessing every administration, the man who ran against me twice, who not I but the people of Waukegan thumped very decisively at the polls both times. I'm talking about Harry Kilbane, who happened to be the chairman of the Planning Commission for the City of Waukegan, and Harry Kilbane, I repeat, is the one that brought Lake County Gardens to Waukegan.

Harry Kilbane and his brother Frank Kilbane are the ones that sued in Federal District Court for $405,000.00 commission for finder's fee. Here's a man sitting in public office, appointed by the mayor, and going out as a real estate man, even without a real estate broker's license, and made himself a deal with Centex Corporation and got himself $405,000.00 to bring Lake County Gardens to Waukegan.

Lake County Gardens is a place that's plagued with sewers, the sewer problems, the inadequate sewers that Harry Kilbane settled out of court for 39 homes, that only last year sold 18 of his homes on Delaware Avenue which were high and dry. He didn't take any houses in Lake County Gardens Unit No. 4.

This is the same man that's running ads every day in the Waukegan News-Sun, running ads telling the people of Waukegan what's

wrong with Waukegan under Bob Sabonjian for 16 years, what's wrong with downtown Waukegan. Well, ladies and gentlemen, while I'm sitting here and immediately after this program I wish you'd get in your cars and drive downtown Waukegan right by Harry Kilbane's building on North Genesee Street, just north of the Genesee Theater, the old J. C. Penney building, which Harry Kilbane hopes to attract people, tenants to come in. His building is vacant. Go look at it, see if you see inside the building through the filth on the windows, the awning hanging down in shreds. Is this how you attract people to rent buildings downtown? But he's always second-guessing everyone.

But Harry Kilbane is the guy that made $405,000.00 on Lake County Gardens where the sewers are."

On April 3, 1973, plaintiffs filed their complaint seeking damages for defamation.

In his affidavit in support of his motion to dismiss, defendant stated that the statement complained of was true and in support thereof defendant attached certain exhibits. The exhibits indicated that the plaintiffs did, in fact, file suit in Federal District Court seeking to recover $405,000 as their share of a joint venture for establishing the Lake County Gardens project in Waukegan. The exhibits further showed that an order was entered by the Federal District Court, pursuant to a stipulation, granting plaintiffs 39 lots in the subdivision. The defendant's affidavit further stated that on and prior to February 23, 1973, Harry Kilbane was in fact the campaign manager of defendant's opponent in a political primary election for the office of mayor. The affidavit also alleged that defendant's statements were made for the purpose of informing the electorate of a matter of public interest, namely sewer problems in the city area, and further to correct any false impressions which might have been caused by the series of articles referred to above.

In support of their complaint, plaintiffs filed the affidavit of Harry Kilbane and John Balen, the political primary candidate for mayor. The substance of the Balen affidavit was that Harry Kilbane was not connected with the Balen campaign at any time during his candidacy for office. The affidavit of Harry Kilbane, in addition to realleging the averments of the Balen affidavit, alleged that the defendant's statements were not true in that the intended meaning was to show that Harry Kilbane had used his office for personal gain and to breach his public interest. Harry Kilbane further stated in his affidavit that defendant's statements went beyond fair criticism to malicious and personal attacks on him.

Following a hearing on the motion to dismiss and the supporting affidavits and exhibits, the trial court dismissed plaintiff's complaint with prejudice as indicated above.

■■ In support of their contention that the issues raised by the motion to dismiss were improperly decided on the pleadings, plaintiffs have cited several old cases which do not state current Illinois law. Presently, section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 48(1)(i)) provides:

> "(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. * * *
>
> * * *
>
> (i) That the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand."

In applying this section to defamation suits, it has been held that the issues of privilege (*Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 342 N.E.2d 329), fair comment and criticism on matters of public interest (*Dilling v. Illinois Publishing & Printing Co.* (1950), 340 Ill. App. 303, 91 N.E.2d 635), and innocent construction (*John v. Tribune Co.* (1962), 24 Ill. 2d 437, 181 N.E.2d 105; *Krass v. Froio* (1975), 24 Ill. App. 3d 924, 322 N.E.2d 67) are all affirmative defenses which may be raised by and determined upon a motion to dismiss.

■■ In addition, it is well established that truth is a defense to an action for libel or slander (*Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516; *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138) which must be specially pleaded to be available as a defense (*United States Fidelity & Guaranty Co. v. Hollerich & Walgenbach Co.* (1974), 22 Ill. App. 3d 156, 319 N.E.2d 280). To establish truth as a defense to a defamation action, it is not necessary to establish the literal truth of inoffensive details; rather, a showing of the truth of the gist or sting of the defamatory imputation is sufficient. (*Mitchell v. Peoria Journal-Star, Inc.*) Under article I, section 4 of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, §4), truth is a defense "when published with good motives and for justifiable ends." In examining the instant record, it is clear that the allegation that plaintiffs "sued in Federal District Court for $405,000.00 commission for finder's fee" for bringing Lake County Gardens to Waukegan and that an order was entered in that suit awarding plaintiffs 39 lots was, in substance, true. Whether the suit was for a finder's fee as the defendant stated, or for plaintiffs' share of a joint venture, as plaintiffs contend and as the exhibits indicate, is an inoffensive detail which is immaterial in determining the truth of the allegedly defamatory statement. The same is true of the disputed question of whether Harry Kilbane was the campaign manager of defendant's political primary opponent. In addition, in the defendant's statement, the sole reference to the plaintiff Frank Kilbane was that he, with his brother, has sued in

Federal District Court, so that the truth of this portion of the statement amounts to a complete defense to Frank Kilbane's cause of action. The statement was made in the course of a political election campaign and in apparent response to the efforts of Harry Kilbane to inform the public and influence public opinion on a matter of public concern. We find, therefore, that the trial court was presented with sufficient grounds for finding that defendant's statement was true and published with good motives and for justifiable ends.

We also find that the defendant's statement is capable of an innocent construction, and was therefore properly declared nonactionable as a matter of law. As stated by the Supreme Court in *John v. Tribune Co.*, the innocent construction rule states:

> "* * * that the article is to be read as a whole and the words given their natural and obvious meaning, and requires that words allegedly libelous that are capable of being read innocently must be so read and declared nonactionable as a matter of law." (24 Ill. 2d 437, 442, 181 N.E.2d 105, 108.)

Taking the defendant's statement as a whole, it appears that its gist is that Harry Kilbane, who had run several ads in the Waukegan newspaper criticizing the mayor for certain sewer problems in Lake County Gardens, was himself responsible for bringing the subdivision to Waukegan. When viewed in light of the innocent construction rule, we find that the defendant did not allege, as plaintiffs contend, that Harry Kilbane either committed the offense of official misconduct or that he sold real estate without a broker's license in violation of statute. Rather, again with reference to the innocent construction rule, the statement may be read as alleging that Harry Kilbane, who was chairman of the Waukegan Planning Commission, was responsible for bringing the Lake County Gardens Subdivision to Waukegan and that in so doing he made a profitable and astute business deal with did not require the use of a real estate broker.

■■ The basic thrust of defendant's statement was directed against Harry Kilbane, who, as indicated above, had served the Waukegan community in various capacities, including chairman of the Waukegan Planning Commission and who sought to influence public opinion on the defendant's performance in office and on the sewer issue by running an ad campaign in the newspaper. By thrusting himself into debate on issues of general public interest, Harry Kilbane thereby invited and cannot complain of fair comment and criticism upon his activites. In *Dilling v. Illinois Publishing & Printing Co.*, the appellate court stated, in affirming the dismissal of a complaint on a motion to dismiss:

> "In her complaint plaintiff alleges that she 'is a patriotic author and a lecturer on behalf of Christianity and mericanism.'

'One who by his activities and by written or spoken language attempts to influence public opinion in any way is subject to the free and honest criticism of his efforts by members of the public. Thus, lobbyists and other persons attempting to influence prospective legislation, propagandists seeking public support for their causes, and various persons who participate in civic and state activities, not as office holders or candidates therefor, but merely as private citizens, are subject to the free expression of the opinion of those commentators who honestly but disparagingly pass judgment upon their activities.' [Citation.]" (340 Ill. App. 303, 307, 91 N.E.2d 635, 637.)

We further find that the instant record provides a sufficient basis for the trial court to find, as a matter of law, that the defendant's statements were fair comment and criticism on a matter of public interest.

In summary, we find that the complaint was properly dismissed. The defendant, a public official, in response to criticism by plaintiff, Harry Kilbane, a public figure, made a statement in the course of an election campaign which may properly be considered fair comment and criticism on a matter of public interest, capable of innocent construction and being substantially true. The judgment of the trial court is therefore affirmed.

Affirmed.

HALLETT and DIXON, JJ., concur.