NICHOLAS A. HERMES, Plaintiff-Appellant, *v.* WM. F. MEYER CO. *et al.*,
Defendants-Appellees.

Second District   No. 78-179

Opinion filed November 8, 1978.—Modified on denial of rehearing December 7,
1978.

Richard L. Horwitz, of Řeid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellant.

Fred H. Dickson and Bruce A. Brown, both of Aurora, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Nicholas A. Hermes, claiming as the legal and equitable owner of 20% of the stock of the Wm. F. Meyer Co., an Illinois corporation (hereinafter the Corporation), filed suit against the Corporation and against four of its directors, Melvin W. Meyer, Gretchen Kieso, William J. Meyer and Thomas Kieso, defendants, for an accounting and other relief. The defendants filed a motion to dismiss pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48), contending that the plaintiff lacked the "legal capacity to sue" for the reason that he had divested himself of all interest in the corporate stock. The trial court granted the motion and dismissed the complaint with prejudice. Plaintiff appeals.

The trial court found that the plaintiff had disposed of all legal and equitable interest in the Corporation on or about August 9, 1977, because of the purported exercise by defendant Melvin W. Meyer of a purchase option agreement dated August 25, 1972. In this connection we first consider plaintiff's contention that the court erroneously construed section 48(1)(b) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(b)) to include a motion to dismiss which did not allege incompetency, infancy or similar defenses which we have previously held to be encompassed by this section. (See *Phillips Construction Co. v. Muscarello*, 42 Ill. App. 3d 151, 154 (1976); *Patterson Heating and Air Conditioning Corp. v. Durable Construction Co.*, 3 Ill. App. 3d 444, 446 (1972).) Defendants did not adduce any evidence of any legal inability in the plaintiff as contemplated by section 48(1)(b), and if the motion is

strictly construed to be based only upon the defense of "legal capacity" it must fail.

■■ The motion, however, was made generally under section 48 without reference to its subparagraphs. And, in any event, we are required to give the decree of the trial court a reasonable construction aided by that which is necessarily implied in the judgment. (*Neidhardt v. Frank*, 325 Ill. 596, 602 (1927); *Pope v. Pope*, 7 Ill. App. 3d 935, 937 (1972).) In this view it becomes clear from the record that the trial court dismissed the complaint because it found that plaintiff no longer had any legal or equitable interest in the Corporation and hence had no standing to sue. The question then becomes whether the issue of lack of standing may be properly raised in a section 48 motion. See Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).

■■ The cited subsection provides that a cause may be dismissed on defendant's motion where the defendant can show "that the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." We have held that this portion of section 48 is broadly construed to encompass basic defenses to a claim. (*Ingersoll v. Klein*, 106 Ill. App. 2d 330, 336 (1969); see also *Kilbane v. Sabonjian*, 38 Ill. App. 3d 172, 175 (1976); *Millsaps v. Bankers Life Co.*, 35 Ill. App. 3d 735, 742 (1976).) We conclude that a showing of plaintiff's lack of standing to sue may be a basis for dismissal pursuant to section 48(1)(i) of the Civil Practice Act. This holding requires a review of the evidence bearing on the issue of standing.

The Corporation was incorporated as a wholesale plumbing supply business on March 1, 1953, with Hermes being the owner of 1000 shares of common stock representing 20% of the total shares issued and outstanding. On August 25, 1972, plaintiff and Melvin W. Meyer executed a voting trust and option agreement under which the plaintiff transferred legal title to his 1000 shares to the Aurora National Bank and to Melvin Meyer as co-trustees, retaining a beneficial interest. The trust by its terms was to expire on September 1, 1977, with legal ownership then reverting to the plaintiff. In the option agreement, plaintiff gave Meyer the "right and privilege" to purchase his interest in the stock at any time between March 1, 1975, and September 1, 1977, at a price of $60,000.

The circumstances of the execution of the voting trust and option agreement are in controversy. Mr. John Plain, the Corporation's legal counsel, testified at his deposition that one or two weeks prior to August 25, 1972, the plaintiff approached him and stated that he wanted to place the voting power of his shares of stock at the disposal of Melvin Meyer, expressing the purpose that plaintiff wanted to keep Ervin Kieso, a third shareholder, from controlling the corporation. Plain testified that plaintiff stated that he bore a personal antipathy toward Kieso and that "he wanted to do anything he could" to assist Meyer. Plain also stated that plaintiff

told him at this time that he wanted to give Meyer an option to buy his 1000 shares of stock at $60 a share.

In May of 1977, Melvin Meyer drew up a notice of election to exercise the option. Plaintiff, however, denied that he ever received this notice. On June 8, 1977, the plaintiff sent a letter to Melvin Meyer by which he purported to withdraw the option created by the instrument of August 25, 1972. On June 10, 1977, plaintiff's attorney, John Lamont, wrote to Meyer advising him that he was representing the plaintiff and requesting that any communication should be made directly to the attorney. Lamont also advised the Aurora National Bank, as co-trustee, to the same effect. In response to a request made by Lamont on June 17, 1977, Zalmon Goldsmith, a lawyer for the defendants, on July 7, 1977, wrote to Lamont advising him that he represented Meyer and informing him that the plaintiff would be permitted to examine the books of the corporation. Lamont in a letter suggested the date of August 10 for the inspection which Goldsmith confirmed in his responsive letter on August 6.

On the same date of August 6, Meyer by a document prepared in Goldsmith's office mailed a signed notice of exercise of the option together with a certified check for $60,000 to the plaintiff by certified mail. No notice of the mailing was given to Lamont. The notice and check were received by plaintiff on August 9, 1977. On the following day Lamont and a certified public accountant examined the corporate books and records of the Meyer Company; and on that same day the plaintiff delivered to Lamont the notice and certified check he had received the previous day.

In a conference between Goldsmith and Lamont in Goldsmith's office on August 29, 1977, the subject of the option and its purported exercise was discussed. Goldsmith encouraged Lamont to discuss with plaintiff a settlement proposal including the payment of a sum of money over and above the $60,000 represented by the certified check then in the possession of Lamont. The plaintiff and defendants were, however, unable to reach a compromise in the following weeks.

On September 21, 1977, the plaintiff brought suit against the Corporation and the four members of its board of directors seeking to compel liquidation of the Corporation and the distribution of its assets to its shareholders; alternatively, the plaintiff sought a distribution of subchapter S (26 U.S.C. §1371 *et seq.*) earnings of the defendant Corporation; also, alternatively, the plaintiff sought an order compelling the payment of dividends on the common stock of the Corporation.

The section 48 motion here in issue was filed on October 28, 1977. The evidence at the hearing on the motion consisted of the affidavit of Melvin Meyer, the affidavit of the plaintiff, the affidavit of John Lamont and the depositions of Melvin Meyer, Gretchen Kieso (Glessner) and John G. Plain. At the hearing plaintiff filed his response and requested a

continuance of the hearing on the motion so that he could furnish the court transcripts of depositions that were scheduled for three days after the court date. The trial court denied the motion for continuance on the ground that the motion should have been argued before the merits of the section 48 motion had been reached.

On these facts we hold that the trial court erred in its conclusion that the plaintiff had no legal or equitable interest in the Corporation and that the court erroneously dismissed the suit.

The rationale of the trial court that the defendant Melvin Meyer possessed and exercised an enforceable option to buy plaintiff's shares of the Corporation is not supported by the evidence.

■■ The general principles applicable to option contracts have been long established. An option contract has two elements, an offer to do something, or to forbear, which does not become a contract until accepted; and an agreement to leave the offer open for a specified time (*Bonde v. Weber*, 6 Ill. 2d 365, 374 (1955)), or for a reasonable time (*Bates v. Woods*, 225 Ill. 126, 130-31 (1906)). An option contract must be supported by sufficient consideration; and if not, it is merely an offer which may be withdrawn at any time prior to a tender of compliance. (*Foley v. Hedenberg*, 208 Ill. App. 163, 169 (1917), *aff'd*, 285 Ill. 210 (1918).) If a consideration of "one dollar" or some other consideration is stated but which has, in fact, not been paid, the document is merely an offer which may be withdrawn at any time prior to a tender of compliance. The document will amount only to a continuing offer which may be withdrawn by the offeror at any time before acceptance. (*Threlkeld v. Inglett*, 289 Ill. 90, 94-95 (1919).) The consideration to support an option consists of "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other" (*Lipkin v. Koren*, 392 Ill. 400, 406 (1946)); or otherwise stated, "Any act or promise which is of benefit to one party or disadvantage to the other * * *." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 330 (1977).

■■ Here, the option recites a consideration of one dollar and other good and valuable consideration. However, while Melvin Meyer testified at his deposition that he actually gave the plaintiff one dollar, plaintiff in his affidavit specifically denied receiving any consideration for the granting of the option, and John Plain, the corporation's legal counsel, testified that, in fact, no consideration was actually given. Moreover, the defendants have not argued that the option contract was supported by consideration of one dollar. They instead claim that the consideration is found in plaintiff's desire to thwart Ervin Kieso and to maintain plaintiff's own position as an officer and director of the corporation. But it is unrealistic to argue that one protects his position as an officer and director

of the corporation by giving another person an option to buy him out, particularly when he held the balance of power in the sense that he was a 20% shareholder with Meyer and Kieso each owning 40% of the shares of the corporation. It is also not apparent that Melvin Meyer suffered any detriment or disadvantage by reason of the option contract since it did not require him to buy the 1000 shares but merely gave him the privilege of purchase if he should so desire. In our view the option agreement of August 25, 1972, appears to be a gratuitous promise by the plaintiff to sell 1000 shares of stock at $60 a share to Melvin Meyer at any time between March 1, 1975, and September 1, 1977.

Based on our conclusion that the option agreement was not supported by sufficient consideration, it became a mere offer subject to withdrawal by the plaintiff at any time before acceptance by Meyer and we are then required to consider defendants' contention that Meyer accepted the offer before its withdrawal.

■■ ■ While acceptance by mail may be implied if the parties contemplate making the contract complete from the moment the letter is mailed (see, ·e.g., *Wagner v. McClay*, 306 Ill. 560, 563-64 (1923)), no evidence was introduced that the notice of election of May 1977 was ever mailed. This notice of election to exercise the option was supposedly signed by Melvin Meyer on some unspecified date in May of 1977 and given to his lawyers for the purpose of transmittal to the plaintiff; but Meyer himself testified that he did not know if the notice of election was ever placed in the mails and plaintiff, in his affidavit, stated that he never received the notice. Further, the notice was not accompanied by a tender of $60,000 as required by the terms of the option. Keeping in mind in reference to a section 48 motion that the court can only grant the motion where the record establishes "with reasonable certainty" the existence of the alleged defense (*Loughman Cabinet Co. v. C. Iber & Sons, Inc.* 46 Ill. App. 3d 873, 876 (1977)), the court on this record could not have properly concluded that the option was exercised in May 1977.

■■ On June 8, 1977, the plaintiff mailed a notice of withdrawal of the option to Meyer which Meyer admits in his deposition that he received. Since the option was not supported by consideration as we have found, the withdrawal on June 8, 1977, destroyed Meyer's power to accept the offer of sale with the result that Meyer's notice of exercise of option on or about August 9, 1977, with an accompanying tender of $60,000 was of no force or effect.

■■ Nor do we find defendant's alternative contention that apart from the existence of any option contract the notice of election of August 9, 1977, with the accompanying tender was an offer by Meyer to buy the stock which plaintiff impliedly accepted by retention of the $60,000 certified check. It is, of course, true that the acceptance of an offer under certain

circumstances may be implied from conduct which is clearly related to an agreement. (See, *e.g.*, *Lundin v. Egyptian Construction Co.*, 29 Ill. App. 3d 1060, 1064 (1975); *W. J. Voit Rubber Co. v. Peoria Coca Cola Bottling Co.*, 280 Ill. App. 14, 22 (1935).) However, there is no evidence in this record of a course of conduct by the plaintiff that would unequivocally indicate assent. Plaintiff received Meyer's letter containing the notice of election and the certified check on or about August 9, 1977, and within a day or so delivered the notice and check to his attorney Mr. John Lamont who on August 29 met with the defendants' lawyer. Defendants' lawyer suggested to Lamont that he discuss the settlement proposal with his client, suggesting that the defendants would be willing to pay the plaintiff a sum in excess of $60,000 for purpose of settlement. The implication contained in this suggestion is that Lamont retain the check for settlement purposes. On November 7 or 8, 1977, when the depositions of Meyer, the plaintiff, and a third person were taken Mr. Lamont offered to return the check to one of defendants' lawyers who refused to accept it. Under the circumstances it clearly appears that the check was retained for use only in case the then pending negotiations materialized into an agreement and it cannot be said that plaintiff's conduct unequivocally indicated his assent to a supposed offer to purchase.

It appears therefore that the plaintiff remained the owner of a beneficial interest in the corporation through September 1, 1977, when the trust established on August 25, 1972, expired by its own terms. At that time the plaintiff became once again the legal and equitable owner of a 20% interest in the corporation. Thus, at the time of the hearing in December of 1977, it appears that the plaintiff had a real and substantial interest in seeking the relief he prayed for in the complaint. We therefore reverse and remand with directions to the trial court to vacate its order dismissing the complaint, to reinstate the complaint, and to thereafter proceed with an evidentiary hearing. In view of our conclusion we do not reach plaintiff's contention that the trial court abused its discretion in refusing to grant the plaintiff's motion for a continuance.

Reversed and remanded with directions.

GUILD and WOODWARD, JJ., concur.