EVELYN B. SMITH, Plaintiff-Appellant, *v.* ST. THERESE HOSPITAL *et al.*, Defendants.—(ELI LILLY & CO., Defendant-Appellee.)

Second District   No. 79-357

Opinion filed August 20, 1980.

Cohn & Flynn, of Chicago, for appellant.

Max E. Wildman, Richard C. Bartelt, Miles J. Zaremski, and Robert L. Shuftan, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Plaintiff, Evelyn B. Smith, brought this action against a hospital, certain physicians and several drug manufacturers, for the recovery of damages alleged to have been sustained by her when she was administered the drug Atrophine Sulphate. The trial court granted the motion to dismiss of defendant, Eli Lilly & Co. (Lilly) brought under section 48(1)(i) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par.

48(1)(i)). This interlocutory appeal concerns only the dismissal of Lilly from the action.

In her complaint filed on February 6, 1979, counts III, IV and V joined as defendants Lilly; the Vitarine Co., Inc.; Invernex Pharmaceuticals, a division of the Mogul Corporation; and unknown drug manufacturers, packagers and distributors, who, it was alleged, were engaged in the business of manufacturing, distributing and selling Atrophine Sulphate. Plaintiff further alleged that during the time in issue these defendants supplied medicines and drugs, including Atrophine Sulphate, to the hospital where she was undergoing treatment for a gallbladder condition; that as a part of her care and treatment her physicians administered Atrophine Sulphate to plaintiff and that "plaintiff does not know and cannot determine which of the said defendants manufactured the particular dose of Atrophine Sulphate administered to her." The complaint further alleges, *inter alia*, that after taking the drug on or about February 13, 1977, she suffered a reaction to it causing loss of sight in one eye and impaired vision in the other eye; that defendants failed to properly test the drug, failed to warn of its effect upon the eyes, manufactured the drug in an unreasonably dangerous condition and breached the implied warranty of merchantability.

Lilly did not answer the complaint, but on March 19, 1979, demanded a bill of particulars wherein it requested, among other things, information regarding the physical characteristics of the package in which the drug came and any labeling on the drug itself or on the package insert accompanying it. Plaintiff filed her bill of particulars on April 13, 1979, responding that the information requested was under the control of defendants, but also attached as an exhibit a document which plaintiff believed to be a "part of the labeling on the drug." The exhibit contained a description of the drug Atrophine Sulphate, together with information relating to dosages and possible adverse reactions, and the name "Invernex Pharmaceuticals, a Division of Mogul Corporation" was printed on the bottom of the label.

Thereafter, on April 30, 1979, Lilly moved for its involuntary dismissal pursuant to section 48 of the Civil Practice Act, asserting essentially that only one drug company manufactured the drug administered to plaintiff; that plaintiff states in the complaint she does not know which of the defendants did so and by her bill of particulars refers to a drug package insert containing the name of a co-defendant, Invernex Pharmaceuticals, a Division of Mogul Corporation. Lilly concluded plaintiff thus had no reasonable basis to bring or 'maintain this action against Eli Lilly & Co., as plaintiff only had evidence implicating another defendant which did not indicate that Lilly manufactured the drug in question. Defendant also refers to plaintiff's response to a similar question

in an interrogatory served upon plaintiff by another defendant in which plaintiff stated "the only paper that is in plaintiff's possession at this time is that document that was enclosed in the box from Invernex Pharmaceuticals. Plaintiff anticipates additional articles and papers will be used." The trial court granted Lilly's motion on June 14, 1979, and plaintiff appeals.

Plaintiff contends that it was error to grant defendant's motion to dismiss as it was not based upon any of the nine specific grounds set forth in section 48 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(a) through (i)). Defendant concedes that a section 48 motion is limited to one or more of the grounds listed but contends that section 48(1)(i) is sufficiently broad to encompass a motion to dismiss based upon a lack of any relationship between plaintiff, defendant Eli Lilly & Co. and the drug in question. Section 48(1)(i) provides:

"(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

\* \* \*

(i) That the claim or demand asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim or demand." (Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(i).)

It has been stated that the purpose of section 48 is to afford "a means of obtaining at the outset of a case a summary disposition of issues of law or of easily proved issues of fact, with a reservation of jury trial as to disputed questions of fact." (Ill. Ann. Stat., ch. 110, par. 48, Historical and Practice Notes, at 354 (Smith-Hurd 1968); *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 114, 387 N.E.2d 878, 884; *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 667, 373 N.E.2d 645, 649.) Defendant relies upon *Dixon v. Ford Motor Credit Corp.* (1979), 72 Ill. App. 3d 983, 391 N.E.2d 493, and the cases cited therein. That court noted the proper scope of section 48(1)(i) was, indeed, a troublesome area in our law and that one of the issues presented to it was whether that section was broad enough to encompass defenses such as the nonexistence of an agency relationship. The court declined to address that issue, however, determining that the case had been properly dismissed in the trial court on other grounds reached by defendant's motion to dismiss brought pursuant to section 45 of the Civil Practice Act. Ill. Rev. Stat. 1977, ch. 110, par. 45.

This court has most recently considered the question in *Hermes v. Wm. F. Meyer Co.* (1978), 65 Ill. App. 3d 745, 382 N.E.2d 841, where it was determined that the issue of lack of standing of plaintiff to pursue his

action could properly be raised pursuant to section 48(1)(i). We noted that this portion of section 48 "is broadly construed to encompass basic defenses to a claim." (65 Ill. App. 3d 745, 747, 382 N.E.2d 841, 843; see also *Meeker v. Webner* (1977), 51 Ill. App. 3d 716, 366 N.E.2d 539 (whether a transaction was a sale or lease); *Millan v. Seibt* (1977), 49 Ill. App. 3d 506, 364 N.E.2d 521 (whether a contract existed); *Kinney v. Continental Assurance Co.* (1976), 42 Ill. App. 3d 263, 356 N.E.2d 131 (defense of absence of an employment relationship); *Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 175, 347 N.E.2d 757, 761, and *Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 742, 342 N.E.2d 329, 335 (the defense of privilege in actions for libel); *Ingersoll v. Klein* (1969), 106 Ill. App. 2d 330, 245 N.E.2d 288 (a conflict of laws issue).) In these cases the matters determined to be within the scope of section 48(1)(i) were affirmative defenses which would, if established, result in "avoiding the legal effect of or defeating the claim or demand" as is provided by the statute. (See *Meeker v. Webner* (1977), 51 Ill. App. 3d 716, 719, 366 N.E.2d 539, 541; *Kilbane v. Sabonjian* (1976), 38 Ill. App. 3d 172, 175, 347 N.E.2d 757, 761; *Millsaps v. Bankers Life Co.* (1976), 35 Ill. App. 3d 735, 742, 342 N.E.2d 329, 333.) As was stated in *Dangeles v. Marcus* (1978), 57 Ill. App. 3d 662, 667, 373 N.E.2d 645, 649, "[t]he main purpose of section 48 is to provide a means of disposing of issues of law or of easily proved issues of fact. [Citations.] If it cannot with reasonable certainty be determined from the record then before the court that the alleged defense exists,- the motion should not be allowed on that ground. [Citation.] Where the matter alleged in defense is nothing more than evidence upon which a defendant expects to contest a material fact stated in the complaint, to dismiss under section 48(1)(i) is improper. [Citation.]"

■■ In each of the cases relied upon by defendant in which dismissal was granted under section 48(1)(i), the court could determine from the record before it, including affidavits in support of the motion to dismiss, that a defense existed which affirmatively precluded recovery by plaintiff. In the present case, however, defendant essentially seeks to attack plaintiff's claim against it as unsupported by the evidence available to plaintiff at this stage of the pleading; its motion does not raise an affirmative defense, but merely seeks to controvert the allegations of ultimate fact against this defendant made in plaintiff's complaint. *Michigan Avenue National Bank v. State Farm Insurance Companies* (1980), 83 Ill. App. 3d 507, 511, 404 N.E.2d 426, 429-30; *Brewer v. Stovall* (1977), 54 Ill. App. 3d 261, 264, 369 N.E.2d 365, 368-69; *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 585, 325 N.E.2d 799, 808; *House of Realty, Inc. v. Ziff* (1972), 9 Ill. App. 3d 419, 423, 292 N.E.2d 71, 74-75; *Patterson Heating & Air Conditioning Co. v. Durable Construction* (1972), 3 Ill. App. 3d 444, 446, 278 N.E.2d 410, 411.

Lilly has not answered the complaint nor did it support its motion to dismiss with any affidavits; it relies for those established facts from which the court is to draw its legal conclusion solely upon the complaint, bill of particulars and the response to a co-defendant's interrogatory by plaintiff, to which we have earlier referred. Lilly asserts that the facts alleged in the complaint were insufficient for it to formulate a responsive pleading and that it also had insufficient information about the drug in question to offer an affidavit that it did not manufacture the drug administered to plaintiff.

■■ Defendant's argument perhaps points to the essential problem in this case, the lack of knowledge of who manufactured the drug, which was occasioned by plaintiff's inability to complete discovery before defendant's motion was granted. At that time, approximately four months after the complaint was filed, there were pending interrogatories directed to the issues which had been served upon Lilly to which it had not yet responded. At the stage at which this portion of the case was so precipitously dismissed, plaintiff was seeking through discovery procedures to ascertain the source of the drug administered to her but had not yet been able to do so and, in our view, had a clearly insufficient time in which to do so. (*Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 385 N.E.2d 714.) The necessary facts in this case would appear to be primarily within the control of Lilly, or other defendants, and plaintiff is entitled to seek them out before being required to establish her case with particularity in her pleading. (See *Chicago Park District v. Kenroy, Inc.* (1980), 78 Ill. 2d 555, 402 N.E.2d 181; *Central States, Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 384 N.E.2d 123; and *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 379 N.E.2d 1298.) The label which Lilly has seized upon as definitively fixing responsibility for plaintiff's injuries elsewhere than on Lilly may or may not be seen in the same light at a more mature stage of this case. If it is, then appropriate procedures are available to Lilly.

We conclude the trial court erred in granting defendant's motion to dismiss, both on the grounds that the basis for the motion did not present an affirmative defense within the scope of section 48(1)(i) and for the further reason that the trial court abused its discretion in acting upon the motion before plaintiff could reasonably complete her discovery efforts.

For these reasons the judgment of the Circuit Court of Lake County will be reversed and this cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.